PATRICK O'CONNELL *vs.* THE BALTIMORE & OHIO R. R. CO.

RAILROAD COMPANIES, LIABILITY OF TO EMPLOYEES INJURED.—When several persons are employed in the same general service, and one is injured by the carelessness of another, though the negligent servant in his grade of employment is superior to the one injured, the employer is not responsible. The liability to injury of one person from the carelessness of his fellows, is but an ordinary risk, against which the law furnishes no protection but by an action against the wrong-doer.

Though it is the duty of a railroad company to exercise all reasonable care in procuring for its operation, sound machinery, and competent employees, and though they are liable to their servants for the neglect of this duty, yet, after they have procured such machinery and employees, they are not liable to a servant for the injuries occasioned by the neglect of any of his co-servants, employed in the same general business of operating the road.

APPEAL from the Superior Court of Baltimore City:

This was an action brought by the appellant against the appellee, on the 17th of May 1858, in the Superior Court of Baltimore City, to recover damages for an injury sustained by him while riding upon the cars of the Balto. & Ohio R. R. Co., from one point to another of their road in the performance of his duties as laborer, in which capacity he was employed by the company. The pleadings in the cause are set out in the opinion of this Court.

*Exception.* At the trial of the cause the plaintiff proved that on the 7th of September 1857, being in robust health, he was employed with others as a laborer upon the Baltimore and Ohio Rail Road, in shovelling and pitching dirt and gravel into dump cars, to be carried to other parts of the road to be dumped out; that the cars were not quite loaded when the signal was given for the men to get into the cars, that the train might get out of the way of a coming Washington train. One Shaefer was the engineer, and Patrick Downey the boss of the train who directed the laborers in their work, and gave the orders when to stop work and get into the cars. The dump train moved very fast, and as they were rounding a curve, the car in which the plaintiff was, dumped and threw out all the men but one, who clung to the upper side of it. The collar bone of

one of the men was broken and the five toes of one of the plaintiff's feet were so mangled and mashed that they had to be amputated; and he now goes on crutches, will suffer pain as long as he lives, and will never be an able-bodied man.

The defendant proved that the conductor of the dump train "was a steady industrious man, of competent skill and experience in his business as foreman, and of general good habits and character; that "the car was in good order; that it was the practice for the men who dumped the car to adjust it; that if the blocks of the cars had been out of order, they could neither have been loaded nor used on the track; that it is the duty of the engineer and foreman of the ballast train to examine the condition of the cars and see that they are properly adjusted; and that the train in question was entirely under the control of Downey.

The plaintiff offered nine prayers, in substance as follows:

1. If the plaintiff was employed as a common laborer to dig gravel and dirt on the sides of the road, and was transported to different points on the road where he was requir-ed to work, in the dump cars used in said business, and said cars were under the control and direction of a super-intendent, one Downey, and of the engineer of the locomo-tive; and the plaintiff had nothing to do with, and in point of fact, took no part in the management of the train; and while being so transported and employed, the car in which he was riding by reason of a defect therein was upset, and the plaintiff thereby injured, the plaintiff is entitled to recover.

2. That if there was no defect in the car, but it was up-set by reason of the negligence of the superintendent in not properly adjusting the mechanism which maintained the car in its horizontal position, the plaintiff is entitled to recover.

3. That if the failure to adjust the mechanism was due to a want of system in loading, unloading and righting the cars, there was not reasonable care, skill and prudence on

the part of the superintendent, and the plaintiff is entitled to recover.

4. Is like the third, except it refers it to the jury to find whether the practice in loading, &c., was reasonable and prudent.

5. If the jury should find the facts in the first prayer, except that there was a defect in the car, they constitute *prima facie* evidence of a defect in the car or of negligence in the superintendent or engineer, and cast upon the defendant the burden of proving that the accident was not occasioned by a defect in the car, nor by the fault of the superintendent or engineer.

6. If the jury find the facts hypothetically stated in the last prayer, it devolves on the defendant the duty of proving that the disaster was not caused by a defect in the car, and that Downey was a person of competent skill, and in every respect qualified for his position, and that the disaster was not caused by negligence, want of skill or prudence on the part of Downey.

7. If the disaster was caused by a defect in the car, which by the exercise of ordinary care the defendant might have known and provided against, the plaintiff is entitled to recover.

8. If the accident was caused by the substitution of a wooden pin for an iron one, the plaintiff is entitled to recover.

9. That if by the rules and regulations of the company, it was made the duty of the superintendent to examine the cars and see that they were in a good and safe condition, and to send them for repairs, when necessary, to the workshops of the defendant; and that the superintendent knew the car was injured and defective, the plaintiff is entitled to recover.

The defendant offered the following prayers:

1st. "That if jury shall believe from the evidence that the plaintiff in this action was on the 7th September 1857, employed by the defendant as a laborer, along with others

attached to a dirt train on the road of the defendants, and under the direction of a foreman, and that the said foreman and the said plaintiff and others employed with the said train were engaged in the common employment of repairing and keeping in order the said road, and that the said plaintiff was on that day riding in one of the cars of said train in the usual course of his employment, and that while so riding, the said car accidentally upset, and that the plaintiff was thrown out and injured thereby, then the plaintiff is not entitled to recover damages for such injury, unless he shall satisfy the jury by evidence, that the car in which he rode was not of approved construction and material when put upon the road of the defendants for use by the employees thereof, or that the foreman of said employees, or the co-employees of the plaintiff, were not persons of competent skill and experience and general good habits and character in their respective employments.

2nd. "That if the jury shall believe the facts in regard to the employment, and also those in regard to the happening of an accident to the said plaintiff stated hypothetically in the first prayer, and shall also find from the evidence that the said accident was to be attributed to the use of a wooden pin made on the day of the accident by the foreman, in place of an iron one to keep in place the block, that prevented the car already referred to from upsetting, even then the plaintiff is not entitled to recover, provided the jury shall also find that the said car when put upon the road of the defendants for use by the employees thereof, was of approved construction and material.

3rd. "That if the jury shall find from the evidence the facts in regard to the employment of, and accident to the plaintiff, stated hypothetically in the first prayer, and shall further find that the said accident happened in consequence of the car, on which the plaintiff was riding at the time being out of repair, and being improperly used while so out of repair by the foreman, under whom the

plaintiff worked, instead of being set aside until repaired, then the plaintiff is not entitled to recover, provided the jury shall find that said foreman was a person of competent skill and experience in the station he occupied, and of good habits and character.

4th. "That if the jury shall find from the evidence the facts in regard to the employment, and also those in regard to the happening of an accident to the plaintiff, stated hypothetically in the first prayer, and shall further find from the evidence that the said accident happened in consequence of the imperfect adjustment and fastening in its place by the co-employees (of the plaintiffs) or any of them, of a block which prevented the car already referred to from upsetting, then the plaintiff is not entitled to recover, provided the jury shall find from the evidence that the co-employees of the plaintiff were persons of competent skill and experience in their respective stations, and of general good habits and character.

5th. "If the jury shall believe from the evidence the facts in regard to the employment of, and accident to the plaintiff, stated hypothetically in first prayer, and shall further find that the said accident happened in consequence of the car on which the plaintiff was riding at the time being out of repair, and being improperly used while so out of repair by the engineer in charge of the train, (if the jury shall believe from the evidence that it was the duty of the engineer to determine when a car was not fit for use,) instead of being set aside and repaired, then the plaintiff is not entitled to recover, provided the jury shall also find that said engineer was a person of competent skill and experience in the station he occupied, and of general good habits and character."

The Court below (MARTIN, J.) rejected the prayers of the plaintiff, and granted those offered by the defendant, whereupon the plaintiff appealed.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*W. Meade Addison*, for the appellant, argued :

1st. That a railroad company is responsible to its employees for injuries caused by the negligence of a superintendent, or by the use of defective or improper machinery. *Randleson vs. Murray*, 8 *Adol & Ellis*, 109, (35 *Eng. C. L. Rep.*, 342.) *McGatrick vs. Wason*, 4 *Ohio St. Rep.*, 566, 575. *C. C. & C. R. R. Co. vs. Keary*, 3 *Ohio St. Rep.*, 201. *Gillimuster vs. Madison & Ind. R. R. Co.*, 5 *Ind. Rep.*, 344. *Fitzpatrick vs. New Albany & Salem R. R. Co.*, 7 *Ind. Rep.*, 436. *Jurist* 1858, *vol. 4, N. S.*, 1 *Pt.* 770, 771.

2d. That a railroad company is responsible to its employees for injuries sustained by them through the negligence of a superintendent, no matter how well he may be suited for the position. *Dixon vs. Ranken*, opinion of Court of Sessions of Scotland, 6 *Am. R. R. Ca.*, 568, 569, 570. *Little Miami R. R. Co. vs. Stevens*, 20 *Ohio*, 431, 432, 434. And especially if they were not engaged in a common work, or were engaged in a different *department* of duty. *Hard vs. Vt. & Canada R. R. Co.*, 32 *Vermont*, 278. *Wright vs. N. Y. Central R. R. Co.*, 28 *Barb.*, 86. 20 *Ohio Rep.*, 415. 3 *Ohio St. Rep.*, 210, 211.

3d. That a superintendent ought to be a person not only of competent skill and experience and of general good habits and character, but also *careful, prudent and cautious*. *Farwell vs. Boston & W. R. R. Co.*, 1 *Am. Railroad Ca.*, 349, 340, 342. *S. C.*, 4 *Met.*, 36. *Hays vs. Western R. R. Co.*, 5 *Am. R. R. Ca.*, 556, and note. 6 *Eng. R. R. Ca.*, 580, 586. *Hutchinson vs. York, New Castle, &c., R. R. Co., S. C.*, 5 *Exchequer Rep.*, 341. *Skip vs. Eastern Counties R. R. Co.*, 24 *E. Law & Eq. Rep.*, 398. *Redfield on Railways*, 390, note. *Wigget vs. Fox*, 36 *E. Law & Eq. Rep.*, 486, (decided in 1856.) *Tenant vs. Webb*, 86 *Eng. C. L. Rep.*, 805. *Stokes vs. Salstonsel*, 13 *Peters*, 185.

4th. That a railroad company is responsible to its employees for injuries to them caused by defective machinery.

28    v. 20.

notwithstanding the same may have been perfect when put on the road, *it being the duty of the company to keep the same in good order.* *Hard vs. Vt. & Canada R. R. Co.,* 32 *Vermont,* 278; the only case that is authority for the extreme view of the law adopted by the Court.

5th. That dump cars were not suitable cars for employees to ride on. That it was the duty of the company to furnish its employees with suitable means of transportation, and that dump cars were not proper for their transportation, even if in good repair.

A reliance on this point was taken away from the plaintiff, by the instructions of the Court. *Fulton vs. McCraken,* 18 *Md. Rep.,* 543. *Jurist* 1858, *vol.* 4, *N. S., Pt.* 1st, 770, 771. *Noyes vs. Smith,* 28 *Vermont Rep.,* 59. 3 *Ohio St. Rep.,* 201, 218, 213.

*John H. B. Latrobe* and *F. C. Latrobe,* in support of the propositions contained in the several prayers of the appellee, relied on the following authorities: *Farwell vs. Railroad Co.,* 1 *Am. Railway Ca.,* 339. *Hayes vs. Railroad Co., Id.,* 564. 4 *Jurist, N. S., part* 1, 767. *Haid vs. Railroad Co.,* 32 *Vt. Rep.,* 473. *Pierce on Railways,* 286. *Coon vs. Railroad Co.,* 1 *Selden,* 492. *Priestly vs. Fowler,* 3 *Mees. & Wels.,* 1. *Railroad Co. vs. Tindall,* 13 *Ind. Rep.,* 366. *Moss vs, Johnson,* 22 *Ill. Rep.,* 633. *Railroad Co. vs. Cox,* 21 *Ill. Rep.,* 20. *Murray vs. Railroad Co.,* 1 *McMillian,* 385. *Wigmore vs. Jay,* 5 *Exchequer,* 352. *Skip vs. Railroad Co.,* 24 *E. Law & Eq. Rep.,* 396. *Parran vs. Webb,* 37 *Id.,* 281. *Boldt vs. Railroad Co.,* 18 *N. Y. Rep.,* 432. *Sherman vs. Railroad Co.,* 17 *Id.,* 153. *Shannon vs. S. R. R. Co.,* 10 *Cush.,* 228. *Ryan vs. Cumb. Val. R. R. Co.,* 23 *Pa. Rep.,* 384. *Farwell vs. Railroad Co.,* 4 *Metcalf,* 49. *Hayes vs. Railroad Co.,* 3 *Cush.,* 270.

GOLDSBOROUGH, J., delivered the opinion of this Court:

The action in this case was instituted by the appellant against the appellee in the Superior Court of Baltimore

City, to recover damages for an injury sustained by him while in the appellee's employment. It is alleged in the declaration that whilst the appellant was engaged in his work as an employee, without any neglect or carelessness on his part, but through the carelessless of another employee over whom the appellant had no control, a dumping or gravel car of the appellee was upset and fell upon the appellant, and he was permanently injured. That the car on which he was riding, was upset from its defective construction and the unskillfulness and neglect of the employee having charge of the car.

To these allegations the appellee pleaded "not guilty."

At the trial and after the evidence detailed in the record had been submitted to the jury, the appellant offered nine, and the appellee five, prayers.

The prayers of the appellant were rejected, and those of the appellee were granted by the Court. The verdict and judgment being for the appellee, this appeal was taken.

The law arising out of the relation of the parties litigant in this case, is presented for the first time for our consideration. It affects a large class of citizens, a class, constantly being augmented by the diversity of employment incident to the enterprise of the age.

In the absence of any controlling decision in this State, we find ourselves aided in the formation of our opinion by a current "of decisions both in England and in this country, entitled to our highest consideration and greatly relieving us from the responsibility of settling the law as to the relative obligations of parties holding positions similar to the parties in this case."

It is proper to state that though the appellant received the injury stated in his declaration while riding on one of the appellee's cars, it is not claimed that he was a *passenger* who had paid for the privilege of travel, but one of a number of laborers who were in the employment of the appellee, who were required to ride upon the cars to and from the place of their daily labor.

The appellant seeks to recover damages upon the ground that there is an implied warranty on the part of the appellee of the soundness of the machinery put in the hands of its servants so far as any unsoundness therein may be discovered by the exercise of proper care and diligence; and in the employment of men of care, skill and capacity for the full and faithful discharge of the duties that appertain to the position they severally occupy. The appellant also relies upon the fact, as he insists, that he, with other laborers were under the management and control of one Downey as superintendent of the laborers; that Downey was rash and wholly regardless of the safety of the men, and that the train of dumping cars, upon one of which the appellant was riding was managed by an engineer having charge of the train. That neither Downey nor the engineer inspected the cars at or before the time they were started, and that the fixtures by which the cars were adjusted to prevent their dumping, especially the car on which the appellant was riding, were out of order and unadjusted at the time of the accident, and from all these causes he suffered the injury complained of in this suit.

The appellee rests its defence upon the relation of the parties as employer and employee.

That there is no responsibility if the injury arose from the conduct of a co-employee engaged in the same employment, though the co-employee be superior to the one injured.

That the appellee cannot be held responsible if it employed a competent and skillful engineer and superintendent; and does not warrant that these individuals shall faithfully discharge their duty in managing the hands and keeping the machinery in its original safe condition; and that it is a legal and sufficient defence to this action, if the appellee did in fact employ a skillful and competent engineer and superintendent; and if the cars put upon the road were of approved construction, and were in a proper state and condition when put into the hands of the engineer and

superintendent. That at the time of the accident and injury to the appellant, he was riding on one of the cars of which he was required to avail himself in order to facilitate his labor and service. That no compensation was paid directly or indirectly by the appellant for the passage, and the appellee was under no obligation to convey him to or from his work. Therefore he must be presumed to know the nature of his employment and to assume all the risk incident to the service he undertook to perform; and one of those risks was his liability to injury from the carelessness of others who were employed by the appellee in the same service.

Having thus with due care, stated the character of the claim of the appellant and the defence of the appellee, we fully concur in the opinion that the defence is well taken.

It is sustained in all its aspects by an almost unbroken current of authorities both in England and in this country. See the case of *Priestly vs. Fowler*, 3 *Mees. & Wels. Rep.*, 1; 24 *E. Law & Eq. Rep.*, 396. *Farwell vs. Boston & Worcester R. R. Co.*. 4 *Met.*, 49. 1 *Seldon*, 493. 3 *Cushing*, 270. 10 *Cushing*, 228. 32 *Vermont R.*, 473. 23 *Penn. R.*, 384. This last case decided in 1854, is almost identical in its prominent features with the case under consideration. In several of the earliest of these cases, the question being regarded as a new and important one, the Courts in view of its novelty and importance, considered and decided it after careful and mature deliberation.

The following conclusions of law applicable to this case, may be deduced from the above authorities.

When several persons are employed in the same general service, and one is injured by the carelessness of another, though the negligent servant in his grade of employment is superior to the one injured, the employer is not responsible. The liability to injury of one from the carelessness of his fellows, is but an ordinary risk, against which, the law furnishes no protection, but by an action against the wrong doer.

Though it is the duty of a railroad company to exercise all reasonable care in procuring for its operation, sound machinery and faithful and competent employees, and though they are liable to their servants for the neglect of this duty, yet, after they have procured such machinery and employees, they are not liable to a servant for the injuries occasioned by the neglect of any of his co-servants employed in the same general business of operating the road. 23 *Penn. Rep.*, 386, 387. 32 *Vermont Rep.*, 473. 4 *Met. Rep.*, 49.

We are of opinion that these rules of law are so directly applicable to the case under consideration, that they constitute a flat bar to the appellant's right to recover.

It only remains for us to consider the ruling of the Court below in rejecting the appellant's and granting the appellee's prayers.

It is manifest from what we have said as to the law controlling this case that the appellant's 1st, 2nd, 3rd, 4th, 6th, 7th, 8th and 9th prayers, could not have been granted.

We will consider the appellant's 5th in connection with the appellee's first prayer. They both embrace the question, on whom is imposed the burden of proof.

Though the Supreme Court of the United States, in the case of *Stokes vs. Saltonstall*, 13 *Peters S. C. Rep.*, 191, recognize the doctrine that a stage proprietor warrants the safety of passengers as far as human care and foresight can go, and that he will transport them safely; and the facts that "a carriage was upset and the plaintiff's wife injured, are *prima facie* evidence that there was carelessness or negligence or want of skill on the part of the driver, and throws upon the defendant the burden of proof that the accident was not occasioned by the drivers fault;" yet a majority of this Court are of opinion that the above case is not applicable to this. The appellant held no such relation to the appellee; it was under no obligation to look to the safety of the appellant under the circumstances of this case; did

not contract to carry him to and from his place of work, and received no compensation therefor; and he having alleged in his declaration the causes of his injury, must sustain his allegations as in ordinary cases, by corresponding proof. The Court below therefore, in rejecting the fifth prayer of the appellant and granting the first prayer of the appellee, ruled correctly.

The appellee's 2nd, 3rd, 4th and 5th prayers were properly granted. They are sustained by the law of this case as herein announced and are otherwise unobjectionable, as they submit the matters of fact contained in them to be found by the jury.

*Judgment affirmed.*

(Decided Oct. 28th, 1863.)