# THE NATIONAL ENAMELING AND STAMPING CO. *vs.* ALBERT CORNELL by Next Friend.

*Negligence—Master and Servant—Unsafe Machinery Originally Furnished by Master—Evidence—Misleading Instruction to Jury.*

Plaintiff was employed by defendant to operate a machine for making edges on pans by means of an upper die which descended upon a lower stationary die. While at work a bolt came out of a rod in the machine and this accident caused the upper die to be kept in motion until the steam was shut off, and plaintiff's hand was, as a result, caught between the dies, causing the injury for which this action was brought. Plaintiff's evidence was to the effect that a machine like this was not safe unless the bolt was fastened with two nuts ; that the bolt in question had only one nut and that if there had been two the bolt would not have fallen out. Defendant offered evidence to show that there were in fact two nuts on the bolt—an ordinary one and a lock nut. *Held,*

1st. That there was legally sufficient evidence to go to the jury from which they might find that the machine when originally furnished by the defendant did not have two nuts upon the bolt and that consequently the defendant had been negligent in not exercising due care to provide reasonably safe machinery in the first instance.

2nd. That evidence is admissible on the part of the plaintiff to show that the bolt had fallen out of the machine on a previous occasion, as it was relevant to the question whether there was a lock nut on the machine.

3rd. That the evidence of negligence on the part of the plaintiff is not such as to constitute contributory negligence as a matter of law.

In the above case the trial Court, of its own motion, instructed the jury that they were to pass on two single facts, "as to whether or not there was but one nut, and whether or not with one nut the appliance was unsafe, and if you find it was unsafe, then your verdict will be for the plaintiff. If you believe it was proper for two nuts to be on, and there were two nuts, but by some miscalculation or mismanagement there was only one on that day, then the plaintiff cannot recover." *Held,* that this instruction was erroneous since it was apt to mislead the jury as to other questions involved in the prayers granted at the request of the parties, and because the instruction ignored the evidence in the case that the plaintiff was not acting with due care at the time of the accident, which question should have been passed upon by the jury.

Appeal from the Court of Common Pleas (DOBLER, J.), where there was a judgment on verdict in favor of plaintiff for $900.

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Wm. L. Marbury* and *Geo. Weems Williams* (with whom were *Carroll T. Bond* and *Jesse Slingluff* on the brief), for the appellant.

*Wm. Sherman Bansemer* and *Chas. Ellis McPhail*, for the appellee.

BOYD, J., delivered the opinion of the Court.

The appellee was injured while in the employ of the appellant in its factory in the city of Baltimore, and having recovered judgment for the injuries sustained by him, this appeal was taken. Although the plaintiff offered four and the defendant twenty prayers, the principal question involved in the case is a narrow one. The plaintiff was seventeen years of age at the time of the accident and had only been engaged in the work he was doing an hour and half when he was injured. He was working on a power press, which was used to make edges on bread pans. The machine had two dies—the lower one being stationary and being the one upon which the bread pan was placed, and the upper one being movable, when the machine was put in motion it rapidly descended upon the lower, thus forming the edge on the pan and then instantly ascending to its original position. There is a treadle which the operator presses when he desires to start the press, thereby releasing a clutch and allowing a fly-wheel connected by belting with the steam power to run the press. From the treadle there extends upwards an iron rod, from the end of which is another rod which is attached to the clutch. The pressure on the treadle moves the rod, thus opening the clutch and starting the press in motion, and when the foot of the operator is removed from the treadle the clutch is closed and the upper die ceases to move up and down, if the machine is in proper order. But if the connection between the treadle and clutch is broken, the upper die will move up and down until the steam power is taken from the press. At the time of the accident complained

of, the bolt which connected the upright rod with the one attached to the clutch, came out and thus the clutch was opened and the upper die kept in motion until the steam power was removed. The hand of the appellee was caught between the dies while he was in the act of removing one of the pans, causing the injury sued for. The appellee contends that the accident was caused by reason of the bolt which connected the rods only having one nut on it, and the appellant claims on the other hand that there were two nuts on it—an ordinary one and a lock nut—and this is the real issue of fact between them, as the appellee relies on that alleged condition to show that the appellant had not discharged the duty required of it to furnish reasonably safe machinery for him to work with.

There are two bills of exception in the record—the first containing the ruling of the Court on an objection to a question which was asked Frederick Rielander, a witness produced by the plaintiff, and the other includes the rulings on the prayers. The witness, Rielander, had testified that he had worked on the machine and after explaining how the rods were connected, etc., he was asked "What can you say as to whether or not this bolt had ever dropped, in that manner before?" The record shows that the question was objected to, the objection overruled, and an exception noted. Then without stating the answer to that question, the record continues: "Did you ever see the bolt come out in this way before? A. Yes, sir; it did when I was running it. The Court: When was that? A. About a month before he was hurt. And the defendant objected to the witness answering the question objected to, as indicated, but the Court overruled the objection and allowed witness to answer, as above indicated." As the answer to the first question mentioned is not given, the appellee contends that the exception is of no avail. The record does not show that the question originally asked was answered, but after the form of it had been changed it was and the objection was apparently intended to be made to the offer to prove the fact and not merely to the form of the question, and it was probably supposed by counsel that the objection was under-

stood to be to that which was answered.  But without stopping to discuss that, we think it was a relevant inquiry.  The effort of the plaintiff was to prove that there was only one nut on the bolt and he offered testimony of experts that it was not a safe and proper construction to thus connect the rods and that if there had been a lock nut on, the bolt would not likely have fallen out.  The case finally turned mainly on the question whether there was only one nut, and the testimony on the part of the defendant's witnesses tended to show that the use of a lock nut would hold the bolt in place, and that there was one on it.  So although it was to some extent anticipating what would be proven by the defense, and might have been more appropriately offered in rebuttal, it did reflect upon the question whether there was a lock nut on, as the bolt was not likely to come out if there was, according to the theory of the plaintiff, and there was no reversible error in permitting the question to be asked.

Several of the prayers offered by the defendant, and rejected by the Court, sought to take the case from the jury on the ground that the testimony failed to show that the defendant had not discharged its duty towards the plaintiff.  It is conceded by the appellant that the master is bound to use reasonable care to provide reasonably safe and suitable machinery for the employee to work with, but it is contended that when that is once done the master is not required to see that the machinery does not subsequently get out of repair, if he delegates the duty of repairing it to an employee, using due care in the selection and retention of such employee, and furnishes him with proper facilities for doing or causing to be done the repair work, and that if an injury is sustained by reason of the negligence of such fellow servant in failing to repair the machine or report it to the proper agent of the master, the latter is not liable to the injured employee.

The tendency of many Courts of this country has been to require the master to use the same care in maintaining and keeping in repair the machinery, as in furnishing it, and it cannot denied that in some of the later cases in this State the

general doctrine has been stated in terms apparently more liberal to the servant than in *O'Connell's case*, 20 Md. 212; *Shauck's case*, 25 Md. 462; *Wonder's case*, 32 Md. 411, and others cited by the appellant.    In *Stricker's case*, 51 Md. 69, it was said: "It was the duty of the company to exercise all reasonable care to provide and maintain safe, sound and suitable machinery, roadway structures and instrumentalities." That was repeated in *Russell's case*, 88 Md. 571, in substance in *Jamar's case*, 93 Md. 404, and perhaps others, but it was not intended to overrule or disturb the earlier cases, and in *Stricker's case* it was said the rule there announced was supported by *O'Connell's case* and *Wonder's case*.    In Yates v. *McCullough Iron Co.*, 69 Md. 370, the fellow-servant rule, as applicable to such cases, was fully recognized.    The difference is that in Maryland and some other States, the master's duty *to maintain* is ordinarily considered discharged by the employment of competent employees to make the repairs, and by furnishing proper facilities for them, and he is not usually responsible to an employee for the negligence of a fellow-servant entrusted with the duty of making repairs—the negligence in that respect being one of the risks assumed by the servant when he enters the service of the master, while in many other States the employee, whose duty it is to repair, stands in the place of and represents the master and the latter is held responsible for the fellow-servant's failure to repair. In 12 *A. & E. Ency. of Law*, (2nd. ed.) 959, many cases representing the conflicting doctrines are cited.    Then, too, there is a further distinction between the cases in reference to the place furnished by the master to the servant to work in. The authorities generally agree that under ordinary circumstances that duty rests upon the master himself.    He cannot escape liability under such circumstances as are shown in *Jamar's case, supra*, where the instrumentalities furnished were originally safe, but the employer altered them in such way as to make them unsafe, thereby causing the injury.    But without considering that question further, the general rule as to the duty of the master to furnish (originally) safe machinery,

as announced above, is in full force in this State, and we think there was sufficient evidence to go to the jury to determine whether or not the appellant had performed that duty, conceded to be required of it.    There is abundant evidence to show that this press was not reasonably safe without the use of the lock nut, or something more than the one nut—indeed we do not understand that to be disputed.   The only evidence that tends to show with any certainty that a lock nut was originally on the bolt is that of Mr. Andrews, the foreman of the room where the plaintiff was injured.   He testified that he had been acquainted with this press for ten years or more and that it always had a lock nut on the bolt; that one was on it the evening before the accident, when the press was working all right and was the same as it had been for ten years.   Mr. Peregoy, the foreman of the machine shop at the defendant's place, said his duties were to repair all machinery that was reported, "that his attention had never been called to the particular machine in question" before this accident, but "after everything was cleared up in the course of a half hour after the accident," he examined it and found a lock nut on it.  He was shown a model which he explained and after saying that he had worked for the defendant for fourteen years— being employed as foreman of the machine shops for two years and as machinist and draughtsman for twelve years—he was asked, "Have you ever had the opportunity of observing this device in operation, or devices similar to this one?" to which he replied, "I have never observed the same device on presses before."   The record does not clearly show just what he meant by that, but if he meant, as the language would seem to imply, that he had never observed the device with a lock nut on the bolt before this accident, it is certainly a most significant fact that one occupying the position he did for so many years never observed it before if it had been used for ten years or more.   But, however that may be, two witnessess on the part of the plaintiff, who were familiar with this machine, testified to facts that at least made it questionable whether this bolt ever did have a

lock nut on it.   Frank Pipkin said he worked about six feet from the machine, and had been working in that room off and on about two months.   He was present at the accident and only saw one nut on the floor " and that from time to time before the accident there was one nut on appliance."   Frederick Rielander worked in that room between two and three months and knew the machine.   He said it was an " ordinary bolt with a head on one end and a nut on the other "—that he saw the machine after the accident to the plaintiff and only saw one nut ; that three or four weeks before the accident he worked on it and it only had one nut on the bolt and after the bolt came out when he was running the press " the machine was fixed up in the same way as before (referring to the bolt with one nut arrangement)."   He also said that after it was fixed Mr. Andrews came over to see it.   The testimony of several expert witnesses was to the effect that if there had been a lock nut on the bolt, it would not have fallen out.   There was, therefore, strong evidence tending to show that at the time of the accident there was only one nut on the bolt—that that was the character of machine at which the plaintiff had been put to work and there was nothing to show that it then differed in its construction from what it was originally.   The plaintiff thus made out a *prima facie* case of a failure on the part of the defendant to furnish a machine such as his duty to the plaintiff required of him.   The defendant then undertook to meet that by proving that it had had the lock nut on it, but Mr. Andrews, the witness relied on to establish that, was contradicted in material respects by at least two witnesses, and if the jury did not believe his testimony they could well find from the other evidence, and inferences to be fairly drawn from it, that there had not been a lock nut on the bolt, and judging from the result, when taken in connection with the Court's instructions, the jury evidently did not believe there had been one on.   So without making further reference to it, we think there was sufficient evidence to require the Court to submit the question to the jury, and hence the first, second and third prayers of the defendant were properly rejected.

Its fourth prayer was also properly refused, as there was not such evidence of negligence on the part of the plaintiff as to authorize the Court to say, as a matter of law, he was guilty of contributory negligence. What we have said above applies to the seventh, as it asked the Court to say that the plaintiff had offered no evidence to show that reasonable care was not used by the defendant in procuring the machine. The eighth ignored the question as to whether it was safe when originally furnished. The ninth assumed there was no evidence that the accident could have been averted by inspection, which is not justified by the record. The tenth was defective for reasons we have already given. The thirteenth required the plaintiff to satisfy the jury that the defendant did not exercise reasonable care to procure sound machinery *and* competent employees, and that the accident happened by reason of the failure in both respects. The eighteenth was faulty in several respects as applicable to the facts of this case and was properly refused. We cannot understand upon what theory the nineteenth could be asked. Other reasons might be given for the rejection of those prayers, but it is unnecessary to add more than to say that some of them are utterly inconsistent with others, which were granted, as is likely to be when twenty prayers are offered in a case in which the facts are so few as they are here.

The appellant has no cause to complain of the theory upon which what is called the " Court's instructions " is evidently based, although we are of opinion that there was error in some of the statements made in them. After in substance telling the jury that if there had been two nuts on this bolt when it was furnished by the defendant, and one of them came off by reason of the negligence of some of the employees, the plaintiff could not recover, and that if on the other hand, there was only one, and the jury thought it unsafe, the verdict should be for the plaintiff, the Court said " In other words, you are to consider all the evidence and are to determine on the two single facts, first, as to whether or not there was but one nut and whether or not with one nut the appliance was

unsafe, and if you find it was unsafe then your verdict will be for the plaintiff. If you believe it was proper for two nuts to be on, and there were two nuts, but by some miscalculation or mismanagement there was only one on that day, then the plaintiff cannot recover." By request of counsel what the Judge said to the jury when he was about to pass on the prayers was reduced to writing and the record says "went by agreement of counsel to the jury room along with the prayers granted." It is manifest that an instruction thus given by the Court would likely have more effect on a jury than prayers offered by the parties, although granted. If jurors find any conflict between an instruction of that kind, and prayers offered by the parties, although granted by the Court, they would in all probability be governed by the former. When, then the Court told them that they were " *to determine on the two single facts*" and especially when it had said before " *that there is but a very slim issue of fact*" the jury would likely be misled as to other questions included in the prayers granted by the Court or at least would not give them proper consideration. Eight prayers offered by the defendant had been granted. One of them was that if the jury found from the evidence that the accident was caused by the negligence of the plaintiff, then their verdict must be for the defendant. That was a material question in the case, for it was proper that the jury should pass on the care used by him. There was some evidence that he was not working the press as he should and he was placing his hand in the center of the pans in removing them, which was not necessary or right according to the theory of the defendant, and other facts as to his care were to be considered. If the jury believed that the injury was caused by his negligence, then he was not entitled to recover, whether the machine was defective or not, but the Court's instructions utterly ignored that question as well as others embodied in the defendant's prayers. There was, therefore, error in giving what is called the " Court's instructions." They were excepted to by the defendant and we do not understand the statement in the record that they went by agreement of counsel to the jury

room to mean that the defendant waived its objection to them. On the contrary there was not only a general exception noted, but special exceptions in writing were filed. The Court had already given them verbally and counsel for defendant might well have preferred to have them in writing and given to the jury, so they could not be misunderstood.

The only other questions are the rulings on plaintiff's first and third prayers, as we do not understand the fourth to be objected to. Under the theory upon which this case was tried, we do not see how the defendant could have been injured by these prayers. The first states a correct legal principle and was not calculated to mislead the jury as to what was meant by "maintaining" safe machinery, with the Court's instructions before them. The third was also harmless with that instruction. The theory on which it was based seems to have been adopted by both sides. The defendant's twelfth and fifteenth prayers, which were granted, asked the Court to instruct the jury on the same general questions involved in it, and hence it ought not to complain of the Court's action. For error in the "Court's instructions," the judgment must be reversed.

> *Judgment reversed and a new trial awarded, the appellee to pay the costs.*