## THE ATLANTA AND CHARLOTTE AIR LINE RAILWAY COMPANY *vs.* TANNER.

1. Where the contract for service as conductor on a railroad through different states is made at the terminus in one state wherein is the office of the company, and the injury to the conductor occurs in another state, on a suit for damages by the conductor, does the law of the place of the contract or of the place of the hurt govern, the negligence charged being mainly the neglect of properly inspecting the machinery of the train at the point where the contract was made? *Quære.*

2. Assuming that the law of the place of the hurt is the law of the case, the law of South Carolina, and not of Georgia, will be applied by the courts of Georgia to the cause when tried in this state, except in so far as mere modes of procedure and matters of practice in court are concerned.

3. There being no statute reglating the rights of parties in such cases in South Carolina, and the common law prevailing there, the courts here, in a liberal spirit of comity, will apply the construction of the common law in that state by its highest judicial tribunal to the facts of the pending case. So applying the principles there decided to this case, the court below did not err to the prejudice of the plaintiff in error, and it cannot complain.

4. In all judicial proceedings in this state, facts are for the jury, and there being evidence enough to support the verdict, and the true facts as found by the jury making a case recoverable under the common law as generally understood and ruled wherever that system prevails, and not at variance with the latest adjudications in South Carolina, and the presiding judge having approved the finding of the jury, our rule of practice in this state is that this court will not interfere except in cases of abuse of discretion. In this case it has not been abused.

Laws. Comity of States. Damages. Railroads. Verdicts. Before Judge HILLYER. Fulton Superior Court. October Term, 1881.

Tanner brought suit against the Atlanta and Charlotte Air Line Railway Company. The declaration contained two counts, the first for an injury to one of plaintiff's legs, the other for the loss of his leg. The latter was the count

relied on for a recovery. It alleged substantially as follows: On October 4th, 1879, plaintiff was engaged as conductor of a freight train on defendant's road. He was ordered to run close on schedule to Gaffney's, regardless of another train known as number 48. When the freight train reached Gaffney's the engineer pulled up, and plaintiff got off, but finding that the engineer was moving on without sending a flagman ahead, and being unable to stop him by calling to him, plaintiff started up the ladder on the side of a box car for the purpose of ringing the gong on the engine to stop the engineer. In ascending, he placed his foot either on a round of the ladder, or the place where a round should have been. The round was either already gone, or else so nearly broken off that it immediately gave way, precipitating him to the ground, and the train passed over his leg, crushing it and necessitating its amputation. It was dark at the time of the accident, and plaintiff could not have seen that the round of the ladder was broken; but the company could have discovered and remedied the defect before the car left Atlanta, the duty of inspecting cars before leaving the depot being separate and distinct from the service in which plaintiff was employed. Under the circumstances, at the time of the injury it would have been easier for plaintiff to have climbed the ladder than to have entered the cab, had the rounds of the ladder been in proper position. Plaintiff was employed by defendant to run as a conductor from Atlanta, Ga., to Central or Charlotte, S. C. The contract was made in Georgia; the injury occurred in South Carolina. (The injury was described as to its extent and results, the damages accruing, etc.)

To this action defendant filed a plea of the general issue, and certain special pleas as to the first count, which are not material here.

On the trial, the following facts were not contested: Tanner was a conductor on defendant's freight train. On the trip when the accident happened, he left Atlanta

some minutes behind schedule time, owing to a delay in getting certain cars loaded with cotton. He was instructed to catch up and get on schedule time. Ordinarily this train would have met the passenger train from Charlotte at Cowpens, S. C., about 3 or 4 o'clock, A. M., but on arriving, Tanner and his engineer received a telegram from the trainmaster to run on to Gaffney's regardless of the passenger train; they accordingly ran to Gaffney's, Tanner riding on the engine so as to communicate with the telegraph operator on arriving at Gaffney's. The cab belonging to that train had been broken in an accident, and on this trip a car formerly used as a baggage car was attached instead of a cab. On arriving at Gaffney's, plaintiff stepped from the engine as it was running slowly, and started to wake up the telegraph operator, as he had been instructed to do. Looking round, he saw the train moving on; he waved his lantern and halloed to stop it, but failing to attract attention, he started to climb up the side ladder of one of the box cars, which was just passing him, for the purpose of reaching the bell rope. In doing this, his foot did not strike a round of the ladder, and he fell; his leg was crushed and had to be amputated.

Plaintiff insisted, and introduced evidence to prove, that the round of the ladder was gone; that it was the duty of the defendant's car-inspector to have examined the car before it left Atlanta, and to have reported the defect; that he did make an examination, but told the plaintiff that his train was all right, and failed to report this defect to the company. Also, that from the appearance of the ladder and the manner of its construction, it must have been broken before it left Atlanta. Plaintiff testified also that before reaching Gaffney's he and the engineer agreed that while the former woke up the operator, the latter would send a flagman ahead; also, that as there was some cotton near the side track, the train should run in on the main track and then back on to the side track, thus avoiding danger from sparks from the engine.

It was the fact that the engineer ran the train ahead without sending out a flagman, which caused him to make the effort to climb upon the car.

Defendant insisted, and introduced testimony to show, that it had selected competent train-inspectors, who had examined this train, and that there was no defect in the car on which the accident happened, or in its ladder. That nothing was in fact said about a flagman between plaintiff and the engineer, and there was no necessity for sending one ahead before the train was backed on to the side-track at Gaffney's; that had plaintiff remained in his cab instead of riding on the engine, the accident would not have occurred.

The evidence was very voluminous, and on many points conflicting, especially as to the physical condition of the plaintiff before the accident; whether his leg was not so weak before as to have been the real cause of the fall; what plaintiff said about the cause of the injury at the time it occurred and afterward; the customs and orders of the railroad in regard to the inspection of trains, their schedules, places of meeting, the extent of damages resulting from the injury, etc., which it is not necessary to detail here. It was conceded that no statute existed in South Carolina regulating liability in such cases, and testimony was introduced on both sides as to the construction given to the common law by the South Carolina courts.

The jury found for the plaintiff $9,000.00.

Defendant moved for a new trial, on the following among other grounds:

(1.) Because the court erred in refusing to give each of the following requests to the jury:

(*a.*) "In cases of corporations, where the duties are discharged by servants, the sole duty of the corporation is to select proper and competent persons, to furnish the servant with adequate materials and suitable means and resources for accomplishing the work. And the law pre-

sumes that the servants so appointed by the master were proper and competent persons to furnish, inspect and repair such appliances, in the absence of an allegation by plaintiff and proof that they were in fact incompetent, and that the master knew they were incompetent, or could have known it by the use of ordinary and reasonable diligence."

(*b.*) "The plaintiff in this case cannot recover, if his injury was occasioned by the fault of a fellow-servant—a person under the same general control, and engaged in the same common pursuit,—and this would include the inspector as well as the engineer, unless the proof shows that the inspector, in addition to his duty of inspector, had been clothed by the master with a duty which the master was bound to discharge, in the matter of furnishing, or in the inspection or repairing of machinery. And the burden is on the servant to show by proof that said coservant, by whose negligence he was injured, was in fact, as to him, more than a fellow-servant, and in fact stood in the master's place."

(*c.*) "If the defendant furnished competent inspectors, and caused the train in question to be inspected before it left Atlanta, at the time in question, and if the inspector thus provided by the defendant, failed in said inspection to find a defective ladder on said train, the defendant would not be liable for any accident to the plaintiff from the absence of said ladder."

(*d.*) "If the defendant provided an inspector whose duty it was to find if there was a defect, such as the absence of a round of a ladder on any of the cars in question, the defendant would not be liable, even if the inspector was negligent in the inspection of said train."

(*e.*) "Defendant would not be liable for the negligence of the inspector in the matter of inspection of the cars of the train in question."

(*f.*) "If you believe, from the evidence, that the accident to plaintiff was caused by the negligence of Kirkham, the engineer, the plaintiff cannot recover."

(*g.*) " In order 'for the plaintiff to recover, he must have been himself free from fault. And if you find that there was any negligence on his part, he cannot recover any thing, even though you believe the defendant was guilty of negli. gence, and even though you find the plaintiff's case was made out in every other point, he still cannot recover any thing, if you find there was the least degree of negli- gence or carelessness on his part, and in such event you should find for defendant."

(2.) Because the verdict is contrary to law, evidence, justice and equity, the charge of the court, and is exces- sive.

The motion was overruled and defendant excepted.

HENRY HILLYER ; L. J. WINN, for plaintiff in error.

HOKE SMITH, for defendant.

JACKSON, Chief Justice.

1. Many questions of interest arise in this case, and all of them have been discussed with rare research and dis- tinguished ability by the counsel. One point presented by the learned counsel for defendant in error is new to us, and we shall leave it where he placed it, in the form of a query, because it is unnecessary to decide, as other points, in our judgment, control the case in favor of defendant in error. The bodily hurt for which damage is sought was inflicted in the state of South Carolina, but the contract by which Tanner, an employé of the company, was hired as conductor of the train was made in Atlanta, Georgia, and the negligence of the company on which mainly he relies for a recovery, also was omission of duty in Atlanta by the company, in failing properly to inspect the ma- chinery of the train. In such case, does the law of the place of the actual injury to the person suing prevail, or the law of the place of the contract and of the prior neg- ligence, which was the real, or at least the prominent rea-

son of the injury? We leave it undecided, because, whether the law of South Carolina or of Georgia be applied to the facts made in the record, the result must be the same. On this point, without reference to the fact that the real negligence occurred in Georgia, see Hutchison on Carriers, 143–4, and Dyke *vs.* Erie Railroad Company, 45 N. Y., 103, cited by defendant in error, and 49th *Ga.*, 107, and Story's Confl. of Laws (6th ed.), 307, cited by plaintiff in error. It will be observed that the case in 49th *Ga.*, does not cover the point made here, for it does not appear in that case where the suitor's husband was employed, nor that the injury was caused by negligence in this state ; but the question here, for the reason above stated, is left open, with the remark, for which alone I am responsible, that the position of defendant in error, under the particular facts here made, strikes the mind with great force.

2. Assuming then that the law of South Carolina governs, the question arises, first, what laws of that state will govern here? The answer is to be found in the case cited above from the 49th *Ga.*, 107, where it is held that to determine what are the rights of the parties the law of Alabama was the guide, but as to the mode of procedure to ascertain those rights, the laws of this state alone should be applied.

3. What then are the rights of the parties under the South Carolina law? No state regulating their rights has been cited, and it is conceded that none exists. The common law must, therefore, be considered the law of that state. What is the common law on the subject matter of the rights of the parties here, in this case, under the facts disclosed by this record, and reported at the head of this opinion? Shall the common law, as we understand it in Georgia, be applied, or the common law as interpreted and adjudicated by the courts of South Carolina prevail? In a liberal spirit of comity, without considering whether the adjudications there would harmonize with the views

of this court on what is the common law on the facts here made, we shall apply the construction of that law by the courts of our sister state to the facts here, and thus ascertain the common law prevailing in South Carolina and apply it as the law of South Carolina, so as to give it full force, as there understood and ruled by its highest court, to determine the legal rights of the parties in this case. The common law in respect to the liability of the master to the servant, as ruled in South Carolina, is to be found in 1st McMullan, 385 ; 15 Rich., 201 ; 8th *Ib.*, 173, and the case of Gunter *vs.* The Graniteville Manufacturing Company, not yet reported, but a transcript of which, duly certified and agreed as correct, is before us.

That being the last adjudication of the law applicable in South Carolina, where this injury occurred, is the rule of law governing the facts here, and eliciting out of those facts the rights of these parties.    It is there decided that a recovery may be had if the injury "resulted from defective instruments or machinery with which the employé is furnished to do his work."    And in that case the court further held that "the liability of the employer for defective machinery does not depend on the fact that the defects are latent and unknown, but it depends on the question of proper care in selecting this machinery, and in keeping it in repair ; " and in summing up and laying down the rule of law, the court further decides that, "the rule of law is the one adopted—a medium line which holds the employer responsible for that part of the work, which falls to him either personally or through his agent, *i. e.*, the proper selection and superintendence both of his operatives and his machinery.    He is a guarantor that all reasonable and proper care shall be exercised in the performance of these duties, and his liability should be limited to a failure to meet his obligations in this respect."

Squaring this case by this rule of law, the question is, was the plaintiff in error hurt by the charge of the court?

The fact on which the defendant in error relied for recovery mainly, is that the officer of the company, Johnson, whose duty it was to inspect the cars, its machinery, and especially the fixed ladder by which the top of the car was reached, neglected his duty, and that the latter was defective, and its defect caused the fall of the conductor and his injury from the train. The charge of the court was to the effect that if Johnson was a head officer of one department of the road—to-wit, that of inspecting cars and machinery to see that all was right before starting, and that this inspection duty or office was devolved on a head officer as a branch of business distinct from that of conductor, and if the defect could not have been as easily discovered by the conductor—if he did not have as good opportunity of doing so, and his failure to discover it was not his fault, if it was of a kind he could not have seen and ought not to have seen, and therefore used the defective ladder without fault himself, then he could recover ; if the truth was otherwise on any of these points of facts, then he could not recover. And further, even if the ladder were defective, and he was ignorant of the defect without fault, still if he could have avoided the injury by the use of ordinary diligence, then he could not recover.

This charge of Judge Hillyer certainly does not approach the rule laid down by the South Carolina court in the case of Gunter *vs.* The Graniteville Manufacturing Company in extent and compass against the employer, and the plaintiff in error, the employer here, has not been injured thereby, and therefore it cannot complain. For, under the rule laid down in that case, if this machinery was defective—and the ladder by which it is the servant's duty to ascend the car is part of the machinery of the train—then, it being the duty of the employer to select and superintend it—he being a guarantor of its having been properly inspected and superintended—then the employé could recover, if without fault himself. It is clear,

therefore, that if error was committed, it was not to the prejudice of the plaintiff in error, and he was not damaged by the charge or the refusal to charge.

4. In all judicial proceedings in this state—in the mode of procedure to ascertain the rights of parties here—the settlement of controverted facts is for the jury; and under the rule laid down in the 49th *Ga.*, p. 107, in the case of *The Selma, Rome and Dalton Railroad Company vs. Lacy*, the law of this State will be applied to its mode of procedure to arrive at the true facts. Under the charge of the court, the jury found the facts to be as contended for by the employé—the defendant in error, and the presiding judge having approved that finding, it must stand, for there is no abuse of discretion anywhere on his part.

Judgment affirmed.

Cited for plaintiff in error: 50 *Ga.*, 251 : 49 *Ib.*, 107 ; 15 *Ib.* 349 ; 30 *Ib.*, 146 ; 62 *Ib.*, 241 ; 64 *Ib.*, 696 ; Story's Confl. Laws (6th ed.) 307 ; Pierce on Railroads, p. 360 ; 15 Rich, 201 ; Pierce on Railroads, p. 361, 365 ; 100 U. S. R., 214 ; Pierce, 371, 373 ; Wood Mas. and Svt. 766, 770, 784, 786, 788, 800, 801, 802, 811, 821, 825, 693, 744 ; 46 Mo., 16 ; 2 Am., 477 ; 20 Md., 212 ; 25 *Ib*, 462 ; *Perry vs., Cent. R. R. Co.*, 66 *Ga.*, 746.

For defendant : Hutch. on Carriers, 143-4; 45 N. Y., 103 ; 1 McMullan, S. C., R., 385 ; 15 Rich., 201; 8 Rich., 173 ; Gunter *vs.* Graniteville Man. Co., S. C. case not yet reported ; 19 Peters, 18 ; 10 Otto, 226, 221–2, 213, 218, 219 ; 93 Ill., 302 ; 2 Thomp. on Neg., 981, 984 ; Cooley on Torts. 557, 561 ; 2 S. L. R., 123 ; Wood on Mas. and Svt., 687, 781 ; Add. on Torts., 603, note 1 ; Wharton on Neg., 212, 232 ; 73 N. Y., 38 ; 8 All. 441 ; 53 N. Y., 549 ; 80 N. Y., 46; 29 Ark., 97; 110 Mass., 240; 46 Mo., 163, 59 *Ib.*, 495 ; 55 Ill., 492 ; 53 Iowa, 595 ; 3 H. and C. 511 ; 16 Q. B., 332 ; Pierce on R. R., 379; 10 Gray, 274; 34 N. J. L., 151 ; 30 *Ga.*, 146 ; 1 *Ib.*, 195 ; 30 *Ib.*, 151 ; 48 *Ib.*, 569; 51 *Ib.*, 583, 644; 58 *Ib.*, 107.