## ADAM FOREPAUGH v. THE DEL. ETC. R. CO.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF PHILADELPHIA COUNTY.

Argued April 5, 1889—Decided October 7, 1889.
[To be reported.]

1. Decisions of the courts of one state upon the commercial or any other branch of the common law prevailing therein, are as binding upon the courts of another state as are decisions based upon statutes, and the distinction drawn by the United States courts between the two classes of decisions is untenable.

2. There is no such thing as a general commercial, or general common law, separate and irrespective of the particular state or government whose authority makes it law. The source of all the authority of the commercial law, is the sanction given it by the governments of particular states in the adoption of its principles in their jurisprudence.

3. The validity of a commercial contract is to be determined by the law of the state wherein it is made and is to be performed, as such law is held by the courts of that state: if valid in that state, it will be enforced in this state, unless its enforcement would offend, directly or indirectly, against justice or morality or the settled law or public policy of the state.

4. A contract made in New York, by which, in consideration of the transportation of a circus train over a railroad in that state, the owner voluntarily agrees to release the railroad company from responsibility for negligence, being valid in New York, will be enforced in this state, as it is not contrary to justice or morality and its enforcement will not derogate from our laws or settled public policy.

5. Whether a railroad company, in furnishing the motive power and train-men to transport over its tracks the circus train of another party, is acting in a capacity other than that of a common carrier and therefore a contract to release it from responsibility for negligence would be valid by the law of this state, if made therein, not decided.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 227 January Term 1889, Sup. Ct.; court below, No. 564 March Term 1887, C. P. No. 1.

On April 6, 1887, Adam Forepaugh brought case against the Delaware, Lackawanna & Western Railroad Company to recover damages for injuries to certain personal property through negligence, while being transported over a line of railroad operated by defendant company. The plea was, not guilty.

At the trial on October 30, 1888, it was shown that on March 18, 1886, at the city of New York, a written contract was entered into between the plaintiff and the defendant company, whereby the latter undertook to transport the show train of the plaintiff from Binghamton to Cortland, both points being in the state of New York. The plaintiff's train was delivered to the defendant company at Binghamton on May 14, 1886, $250, a part of stipulated consideration, being prepaid, and the company began its transportation to Cortland. Before reaching Cortland, and while in the course of transportation and under the control and management of the servants and employees of the defendant company, the train was wrecked through the negligence of such servants and employees.

The contract referred to provided that the defendant company should furnish sufficient motive power, the engineers, firemen, conductors and brakemen, and should transport for the plaintiff from Binghamton to Cortland, and thence to Syracuse, his train of forty-two cars for the sum of $750, $250 thereof to be paid before the departure of the train from Binghamton and Cortland, respectively, and then provided:

" And in consideration that the said party of the first part agrees to perform the said service for the said sum, which is much less than the ordinary, usual and legal rates charged other parties by said party of the first part for a like amount of transportation, and in consideration of one dollar, by said

Statement of Facts.

party of the first part to said party of the second part in hand paid, before the execution hereof, the receipt whereof they do hereby acknowledge, the said party of the second part do hereby release and discharge the said party of the first part and all other railroad companies over whose roads the said transportation is to be done, and all the officers, agents and employees of the said party of the first part, and all other railroad companies over whose roads the said transportation is to be done, from all liability and responsibility for or on account of, or connected with the loss of the life of, or injury to the person of, or any of the persons, or for or on account of, or connected with the loss of, or damage to, or injury to any of the animals, property or things thus transported, although such loss, damage or injury may be caused by the negligence of the said party of the first part, or other railroad companies over whose roads the said transportation is to be done, its or their agents or employees; and the said party of the second part do also for. the consideration aforesaid, agree to indemnify and save harmless the said party of the first part, and all other railroad companies over whose roads the said transportation is to be done, its and their officers, agents and employees, from and against all claims and demands whatsoever, for or on account of any such loss or damage or injury."

The receipt given for charges prepaid was as follows:

" No.——

**THE DELAWARE LACKAWANNA AND WESTERN RAILROAD COMPANY.**

[Rates of storage:—For every hundred pounds of freight left at the station over one day, a charge for storage will be made. All claims for damages to a deficiency must be made before their removal.]

*Binghamton Station*, May 14, 1888.

FOREPAUGH'S CIRCUS TO THE DELAWARE & LACKAWANNA RAILROAD COMPANY, *Dr.*

For handling and transportation from Binghamton to Cortland, five passenger cars, two box of stock, twenty-three platform, three elephant (forty-two cars) . . . $250 00
Back charges prepaid.

*Received Payment,*

C. G. MERRILL, *Agent.*"

The jury returned a verdict in favor of the plaintiff for the sum of $10,481.07, and found specially the facts and contract hereinbefore stated, the court reserving for further argument and consideration the question whether upon said contract the plaintiff was entitled to recover.

Subsequently the defendant moved that judgment be entered in favor of the defendant, non obstante veredicto.

On December 24, 1888, after argument before the court in banc, the court, BREGY, J., delivered the opinion following:

The plaintiff, who was a circus proprietor, owning his own cars, and desiring to go from point to point with his show, made the following contract with the defendant:

[Here follows the contract.]

On the journey from Binghamton to Cortland, by the negligence of an engineer, the train parted, an accident occurred, and considerable property was damaged.

The place of the making and performance of the contract and scene of the accident was in the state of New York. It was proved at the trial, and admitted on the argument of this motion, that this contract is perfectly valid by the law of that state. In Lockwood v. Railroad Co., 17 Wall. 357, Justice BRADLEY, in delivering the opinion of the United States Supreme Court, holds that such contracts are void as against public policy. The jurisdiction of that court is unfettered by state lines, and they have decided to hold invalid all such contracts made within its jurisdiction, and if we were construing a contract of our own state, we would probably come to the same conclusion. But the position of a state court in passing upon the validity of a contract made and to be performed in another state, is quite different from that occupied by the United States Supreme Court, in which state lines are obliterated. We feel, that in passing upon this question, the comity between states requires us to hold this contract to be a valid one. Such is the law, repeatedly declared by the state of New York, the state of the contract: Cragin v. Railroad Co., 51 N. Y. 61; Mynard v. Railroad Co., 71 N. Y. 180. There is no harshness or injustice in holding plaintiff to the contract he made, and in deciding that he cannot, by stepping across the state line, acquire rights here that he would not have had if

suit had been brought in the state where his contract was made and was to be performed.

For these reasons the rule is made absolute, and judgment entered for defendant on the point reserved.

Judgment having been entered for the defendant, the plaintiff took this writ, specifying that the court erred:

1. In entering judgment for defendant non obstante veredicto.

2. In not entering judgment for plaintiff on the verdict.

*Mr. John G. Johnson* (with him *Mr. John A. Brown*), for the plaintiff in error:

1. The defendant, in transporting the plaintiff's train, furnished the motive power, the engineer, conductor, fireman and brakemen. It supplied everything save the cars, which were the plaintiff's. It controlled the transportation, which was over its own railroad. It was therefore acting as a common carrier. There is no analogy between this case and Coup v. Railway Co., 56 Mich. 111 (56 Am. Rep. 374), where the plaintiff hired from the defendant men and motive power, the train to be operated under the management, direction, order and control of the plaintiff or his agent, as in his possession, and by means of said employees as his agents, though according to the regulations and time tables of the company. Nor is there any analogy to the case of a tug boat pulling a barge, in the possession of the owner, over a highway common to the world: New Jersey R. Co. v. Penna. R. Co., 33 Dutch. 100. The receipt offered in evidence subjected the defendant to the full liability of a common carrier. It did not refer to the antecedent contract, and the jury were at liberty to find that it embodied the whole contract, and by the failure to refer to one previously made the terms thereof were waived. The plaintiff was not obliged to, and did not prove this antecedent contract. The defendant offered it as evidence of a release, and in that light it must be considered.

2. The validity of this contract is a question of commercial law, upon which the courts of this state are at liberty to follow their own decisions in the absence of any local statutes or local common law in New York, varying such commercial law. The

New York courts, in holding such contract valid, do not pro-
fess to interpret any statute or local common law of their own
state, but undertake to say what is the common law. This
court is asked to say that its own interpretation of the common
law is wrong, and that of the New York courts is right, and
enforce the latter in a suit here between citizens of this state.
The courts of New York now concede that their interpretation
is wrong, but follow it because it has been established : Nichols
v. Railroad Co., 89 N. Y. 372. The Supreme Court of the
United States follows the decisions of state courts only to a
certain extent, not embracing questions of commercial and
general common law: Green v. Neal, 6 Pet. 291 ; Beauregard
v. New Orleans, 18 How. 497 ; Chicago v. Robbins, 2 Black
418 ; Lockwood v. Railroad Co., 17 Wall. 357 ; Gelpcke v.
Dubuque, 1 Wall. 175 ; Taylor v. Ypsilanti, 105 U. S. 60 ;
Russell v. Southard, 12 How. 139 ; Swift v. Tyson, 16 Pet. 1 ;
Oates v. Nat. Bank, 100 U. S. 239 ; Railroad Co. v. Nat. Bank,
102 U. S. 14 ; Myrick v. Railroad Co., 107 U. S. 102. There
is no higher duty upon our Supreme Court to follow decis-
ions in other states, than rests upon that of the United States :
Faulkner v. Hart, 82 N. Y. 416 (37 Am. Rep. 574), a case
that decides all that we contend for, and which is all the more
decisive in view of the decision of the same court in Curtis v.
Railroad Co., 74 N. Y. 116 (30 Am. Rep. 271).

3. The contract set up is against the policy of[1] the law and
will not be enforced by the courts of this state. This court
has held that a common carrier cannot stipulate for exemption
from the consequences of the negligence of itself or of its em-
ployees, putting the decision upon the ground that a common
carrier is in a position which enables it to extort assent to
such stipulation and that it is against public policy to permit
it to do so. For the statement of the law as to limiting such
responsibility, see Lawson on Carriers, 31 ; Laing v. Colder, 8
Pa. 479. There are numerous dicta of writers and decisions
of courts to the effect that the law of another state, contrary
to the public policy of the state in which it is sought to be ap-
plied, will not be enforced : Whart., Confl. of Laws, § 490 ;
Story, Confl. of Laws, § 244 ; Bank of Augusta v. Earle, 13
Pet. 519 ; Hope v. Hope, 8 De G., McN. & G. 730 ; Rousillon
v. Rousillon, L. R. 14 Ch. Div. 351 ; Oscanyan v. Arms Co.,

103 U. S. 276; Flagg v. Baldwin, 38 N. J. Eq. 219 (48 Am.
Rep. 308); Railroad Co. v. Lockwood, 17 Wall. 357.  Against
this weight of authority the defendant points to decisions by
the courts of Ohio, Iowa and Texas.  The Ohio case is sup-
ported by no reasoning.  In the Iowa and Texas cases there
was no negligence and no question of public policy.

4. Defendant argued below, also, that the rule as to public
policy does not apply where the people of the state as a whole
are not injuriously affected, and the only principle of public
policy involved is one directly concerning the parties to the
contract alone.   There is no such qualification of the doctrine.
In Flagg v. Baldwin, supra, the public were not interested in
the question whether the New York broker should recover
what he claimed.   In Brown v. Railroad Co., 83 Pa. 316, and
Brooke v. Railroad Co., 108 Pa. 529, no question of public pol-
icy arose.   The New York courts have refused to recognize our
law when opposed to their policy, though the transaction in
question took place here between citizens of this state: Keller
v. Paine, 107 N. Y. 83.   Moreover, the contract of release will
not be enforced, because executed under circumstances amount-
ing to duress.   It is not binding because of the power of the
carrier to extort what is unreasonable.   This contract was
as unreasonable and unconscionable as that condemned by
Judge SHARSWOOD in Sime v. Norris, 8 Phila. 84.   In deter-
mining the question of reasonableness, our courts are bound
by decisions in no other state, because the question is one of
conscience and morality, and what amounts to duress is a ques-
tion of evidence settled by the law of the forum.

*Mr. Lawrence Lewis, Jr.,* and *Mr. Hampton L. Carson* (with
them *Mr. J. Bayard Henry*), for defendant in error:

1. In entering into the contract in this case the railroad
company was not a common carrier, and was therefore at lib-
erty to stipulate for exemption from liability for negligence:
Piedmont Mfg. Co. v. Railroad Co., 19 S. C. 353; Gordon v.
Hutchinson, 1 W. & S. 285; Angell on Carriers, § 67, et seq.;
Coup v. Railway Co., 56 Mich. 111 (56 Am. Rep. 374); Beck-
man v. Shouse, 5 R. 179.   The case cannot be distinguished
from the Coup case, in respect of the duties of the railroad
companies under the two contracts.   Nor could the stipulations

in the Coup contract alter the character in which the company acted: Bank of Kentucky v. Express Co., 93 U. S. 174; Read v. Spaulding, 30 N. Y. 630 (86 Am. Dec. 426); Lawson on Carriers, 130. This contract was analogous to that of towage, which is not a contract of common carriage: Leonard v. Hendrickson, 18 Pa. 40; Brown v. Clegg, 63 Pa. 51; Hays v. Millar, 77 Pa. 238. The cars were received and the receipt for them given in pursuance of the previous existing contract. The liability of the defendant was therefore governed by that contract, and not exclusively by the receipt. This proposition is so clear as virtually to prove itself, as the transaction was in strict pursuance of the contract and the receipt did not contradict the prior contract in any respect.

2. The contract stipulating that the defendant should not be liable for accidents, though occasioned by negligence, was valid under the law of New York: Lawson on Carriers, 55; Cragin v. Railroad Co., 51 N. Y. 62 (10 Am. Rep. 559); Mynard v. Railroad Co., 71 N. Y. 180 (27 Am. Rep. 28); Nicholas v. Railroad Co., 89 N. Y. 987; Canfield v. Railroad Co., 93 N. Y. 532 (45 Am. Rep. 268); Wilson v. Railroad Co., 97 N. Y. 87. The construction and validity of a contract are to be governed by the law of the place where it was made and is to be performed: Story, Confl. of Laws, § 242; Addison on Cont., § 195; Whart., Confl. of Laws, § 471 et seq.; Miller v. Tiffany, 1 Wall. 298; Scudder v. Bank, 91 U. S. 406. This principle has been directly applied to contracts of common carriers: Brown v. Railroad Co., 83 Pa. 316; Brooke v. Railroad Co., 108 Pa. 529; Knowlton v. Railway Co., 19 Ohio 260 (2 Am. Rep. 395); Talbott v. Merchant's Des. Co., 41 Ia. 247 (20 Am. Rep. 589); Robinson v. Transportation Co., 45 Ia. 470; Hale v. Nav. Co., 15 Conn. 539 (39 Am. Dec. 398); Fairchild v. Penn. Co., 69 Ill. 260; Gray v. Jackson, 51 N. H. 9 (12 Am. Rep. 1); Carter v. Bennet, 39 Tex. 203; Ryan v. Railway Co., 65 Tex. 13 (57 Am. Rep. 589); First N. Bank v. Shaw, 61 N. Y. 283; McDaniel v. Railroad Co., 24 Ia. 412; Peninsula & O. St. Co. v. Shand, 11 Jur., N. S. 771; Jacobs v. Credit L. L. Agency, 53 L. J. Q. B. 156. Although the Supreme Court of the United States has adopted the fallacious doctrine that it is not bound by state decisions on questions of commercial law, it is clear that state courts occupy a different position and are

subject to a different rule. The decision in Faulkner v. Hart, 82 N. Y. 416 (37 Am. Rep. 574), cited by plaintiff was wrong both on principle and authority: Milwaukee etc. R. Co. v. Smith, 74 Ill. 197; Scott v. Duffy, 14 Pa. 18; Born v. Shaw, 29 Pa. 288; MacCabe v. Blymyre, 9 Phila. 615; Brown v. Railroad Co., 83 Pa. 316; Brooke v. Railroad Co., 108 Pa. 529. Moreover, Faulkner v. Hart is clearly distinguishable from the case in hand.

3. The contract, being valid under the laws of New York, will be recognized and given effect in our courts. The plaintiff is here asserting rights which he does not possess under the law of the place where the contract was made. The only exceptions to the rule of comity on this subject are cases where the enforcement of a foreign contract would be manifestly repugnant to the interests and policy of the state, either as injuriously affecting the commonwealth or its citizens, or, as exhibiting a pernicious example to the citizens of the state. This case is not one of such exceptions: Story, Confl. of Laws, § 38; Wharton, Confl. of Laws, § 401; Greenhood on Public Policy, Rule LXIV.; 2 Kent Com., 458; Bliss v. Brainard, 41 N. H. 256; Greenwood v. Curtis, 6 Mass. 358. The cases cited for plaintiff are all examples of the exceptions above specified, and the public policy of this state is not involved: Richardson v. Rowland, 40 Conn. 565. As to duress, there was in fact none at all, nor was the contract so unreasonable as to prevent its enforcement. The plaintiff has been unfortunate in the authority selected to establish a legal inference of duress. Sime v. Norris, 8 Phila. 84, is directly opposed to the decision of this court in Ransom v. Jones, No. 1190 September Term 1860, 1 Bright. Dig. 307. See also Phinney v. Baldwin, 16 Ill. 108 (61 Am. Dec. 62), and Archer v. Dunn, 2 W. & S. 327. The allegation as to the citizenship of the parties, employed by plaintiff as an ad captandum appeal to supposed prejudices, is without foundation in the evidence, but it is wholly immaterial, and cannot affect their rights under the contract: Peninsula & O. St. Co. v. Bland, 11 Jur. (N. S.) 771; Archer v. Dunn, 2 W. & S. 327.

OPINION, MR. JUSTICE MITCHELL:

Plaintiff, being the proprietor of a circus, made a special

contract with defendant for the transportation of a number of his own cars, upon certain conditions and terms, elaborately set out in writing, among which was a stipulation that in consideration that the service was to be performed "for much less than the ordinary, usual, and legal rates charged other parties for a like amount of transportation," the plaintiff released the defendant from all liability for or on account of loss, damage, or injury to any of the animals, property, or things thus transported, "although such loss, damage, or injury may be caused by the negligence of the (defendant), its agents, or employees." Damage having occurred by the negligence of defendant, plaintiff brought this suit, and the sole question before us is whether it can be maintained in the face of the stipulation above set forth.

The contract was made, was to be performed, and the alleged breach occurred in New York. No possible element was wanting, therefore, to make it a New York contract. It is admitted that in New York the stipulation is valid, and this action could not be maintained: Cragin v. N. Y. C. R. Co., 51 N. Y. 61; Mynard v. Railroad Co., 71 N. Y. 180; Wilson v. Railroad Co., 97 N. Y. 87. Why, then, should plaintiff, by stepping across the boundary into Pennsylvania, acquire rights which he has not paid for, and his contract does not give him?

It is argued that the validity of this contract is a question of commercial law, and therefore the mere decisions of the New York courts are not binding, and in the absence of any statute in New York expressly authorizing such a contract, the courts of this state must follow their own views of the commercial, as part of the general common law, though different views may be held as to such law by the courts of New York.

This is the main argument of the plaintiff, and as it is one which is frequently advanced, and affects a number of important questions, it is time to say plainly that it rests upon an utterly inadmissible and untenable basis. There is no such thing as a general commercial, or general common law, separate from, and irrespective of a particular state or government whose authority makes it law. Law is defined as a rule prescribed by the sovereign power. By whom is a general commercial law prescribed, and what tribunal has authority or recognition to declare or enforce it outside of the local juris-

diction of the government it represents? Even the law of nations, the widest reaching of all, is a law only in name. It has but a moral sanction, and the only tribunal that undertakes to enforce it is the armed hand, the ultima ratio regum. The so-called commercial law is likewise a law only in name. Upon many questions arising in the business dealings of men, the laws of modern civilized states are substantially the same, and it is therefore common to say that such is the commercial law, but, except as a convenient phrase, such general law does not exist. There must be a state, or government, of which every law can be predicated, and to whose authority it owes its existence as law. Without such sanction, it is not law at all; with such sanction, it is law without reference to its origin or the concurrence of other states or people. Such sanction it is the prerogative of the courts of each state itself to declare. Their jurisdiction is final and exclusive, and in this respect there is no distinction between statute and common law.

It is universally conceded that, as to statutes, the decisions of the state courts are binding upon all other tribunals, yet such decisions have no higher sanction than those upon the common law, for what the latter determine, equally with the former, is the law of the particular state. The law of Pennsylvania consists of the constitution, treaties, and statutes of the United States, the constitution and statutes of this state, and the common law, not of any or all other countries, but of Pennsylvania. There is a common law of England, and a common law of Pennsylvania mainly founded thereon, but with certain differences, and the only tribunal competent to pass authoritatively on such differences is a Pennsylvania court. To take a familiar illustration: In the United States the universal doctrine has always been that the English colonists brought with them and made part of their laws, all the common law of England that was not unsuited to their new situation. No part of the common law of England is better settled than the doctrine of ancient lights. The Court of Chancery of New Jersey, in Robeson v. Pittenger, 1 Green Ch. 57 (1838), held that the same doctrine was part of the common law of New Jersey. The Supreme Court of Pennsylvania, on the other hand, starting with the same premises and reasoning on the same principles, but proceeding cautiously from the dictum

of ROGERS, J., in Hoy v. Sterrett, 2 W. 331 (1834), to the unanimous decision of the court in Haverstick v. Sipe, 33 Pa. 368 (1859), held that the doctrine of ancient lights by prescription was not part of the common law of Pennsylvania. No tribunals of any other state presume to question that the common law of New Jersey and the common law of Pennsylvania differ on this point. What is law in one state is not law in the other, not because it was or was not the common law of England, but because it is or is not the law of the respective states. And, though it rests only on the decisions of the courts, it is none the less absolutely and indisputably the law than if it had been made so by statute.

I have purposely selected an illustration from the law relating to real estate, because if I took one from the commercial law, it might seem like assuming the very question under discussion. But the example is none the less pertinent. The point is, the force of judicial decisions on the common law, and the assumption that there is any tenable basis for holding them less binding upon such law than upon statutes. The so-called commercial law derives all its force from its adoption as part of the common law, and a decision on the commercial law of a state stands upon precisely the same basis as a decision upon any other branch of the common law. The only ground upon which any foreign tribunal can question either, is, that it does not agree with the premises or the reasoning of the court. But the same ground would enable it to question a decision upon a statute, because a different construction seemed to it nearer the true intent of the legislative language, and this it is universally conceded no foreign court can do. There is no difference in principle. The decisions of a state court, upon its common law and on its statutes, must stand unquestioned, because it is the only authority competent to decide, or they must be alike questionable by any tribunal which may choose to differ with its reasons or its conclusion.

It is not probable that the doctrine of such a distinction would ever have got a foothold in jurisprudence, and it would certainly have been long ago abandoned, had it not been for the unfortunate misstep that was made in the opinion in Swift v. Tyson, 16 Pet. 1. Since then the courts of the United States have persisted in the recognition of a mythical commer-

cial law, and have professed to decide so-called commercial questions by it, in entire disregard of the law of the state where the question arose. It is argued now that as to such questions the state courts also have similar liberty. It would be sufficient answer to this argument, that such a course, by reading into a contract a new duty not in contemplation of the parties, and not part of it by the law of the place where it is made, is in principle and in practical effect impairing the obligation of the contract, which even the sovereign power of a state is prohibited from doing. But we prefer to rest the matter on the broader ground that the doctrine itself is unsound. The best professional opinion has long regarded it as indefensible on principle, and is thus very recently summed up by the most learned of living jurists:

"Questions growing out of contracts made and to be performed in a state, are decided by the national court of last resort, not in accordance with the unwritten or customary law of the state where they originated, as expounded by its courts, but agreeably to some theoretic view of a general commercial law, which does not exist, and is not to be found in the books. The state courts, on the other hand, adhere to their own precedents, and do not consider themselves entitled to impair the obligation of contracts that have been made in reliance on the principles which they have laid down through a long series of years. The result is a conflict of jurisdiction which there are no means of allaying. . . . . Whether a recovery shall be had on a promissory note, which has been taken as collateral security for an antecedent debt, against a maker from whom it was obtained by fraud, is thus made to turn in New York, Pennsylvania, and Ohio, not on any settled rule, but on the tribunal by which the cause is heard; and if that is federal, the plaintiff will prevail; if it is local, the defendant. Such a result tends to discredit the law. . . . . The enumeration might be carried further, but enough has, perhaps, been said to show that no uniform rule can be deduced from the decisions of the English and American courts under the commercial law, and that the certainty requisite to justice can be obtained only by following the local tribunals as regards the contracts made in each locality. . . . . The several states of this country are collectively one nation, but they are as self-governing in all that concerns

their purely internal commerce as if the general government did not exist; and when the will of the people of New York or Pennsylvania is declared on such matters, through their representatives in the local legislatures, expressly, or by long-continued acquiescence in the rules enunciated by their judges, it cannot be set aside by congress short of an amendment of the constitution. Had the New York legislature declared that notes made and negotiated in that state should follow the rule laid down in Coddington v. Bay, 20 Johns. 637, the federal tribunals would have been bound to carry it into effect, notwithstanding any attempt of the national legislature to introduce a different principle; and it is inconceivable that the judicial department of the government can exercise a greater authority in this respect than the legislative : " Hare on Constitutional Law, pp. 1107, 1117, and see Lecture 51, passim.

We conclude, therefore, that the distinction between the binding effect of decisions on commercial law, and on statutes, is utterly untenable; that the law declared by state courts to govern on contracts made within their jurisdiction is conclusive everywhere ; and the departure made by the United States courts is to be regretted and certainly not to be followed.

In entire accordance with this view are our own cases of Brown v. Railroad Co., 83 Pa. 316, and Brooke v. Railroad Co., 108 Pa. 530; and the decisions in Ohio: Knowlton v. Erie Ry. Co., 19 Ohio 260 ; in Illinois: Penna. Co. v. Fairchild, 69 Ill. 260 ; Milwaukee & St. P. R. Co. v. Smith, 74 Ill. 197 ; in Iowa: Talbott v. Dispatch Co., 41 Ia. 247 ; Robinson v. Dispatch Co., 45 Ia. 470 ; in Connecticut: Hale v. Navigation Co., 15 Conn. 539; in Kansas: Railroad Co. v. Moore, 29 Kan. 632 ; in South Carolina: Bridger v. Railroad Co., 27 S. C. 462; in Georgia: Railroad Co. v. Tanner, 68 Ga. 390 ; in Mississippi: McMaster v. Railway Co., 65 Miss. 271; in Texas: Carter v. Bennett, 39 Tex. 203; Ryan v. Railway Co., 65 Tex. 13, and perhaps in other states. I will not notice them in detail further than to quote the terse and forcible summary made by SCOTT, J., in Knowlton v. Railroad Co. : " As the contract was made within the jurisdiction of New York, and contemplated no action outside of that jurisdiction, it is clear that the question of its validity must be determined solely by the laws of New York. The rights and obligations of the parties to such a contract,

and in respect to the manner of its execution, cannot be affected by the laws or policy of other states. If no cause of action arose to the plaintiff under his contract when the accident occurred, the transaction cannot be converted into a cause of action by the fact that the parties have subsequently come within the jurisdiction of Ohio."

Holding, therefore, that the validity of this contract is to be determined by the law of New York, as decided by the courts of that state, is there any reason why the courts of this state should not enforce it? The general rule is, that courts will enforce contracts valid by the law of the place where made, unless they are injurious to the interests of the state or of its citizens: Story on Conflict of Laws, §§ 38, 244. The injury may be indirect by offending against justice, or morality, or by tending to subvert settled public policy: 2 Kent, 458; Greenwood v. Curtis, 6 Mass. 358; Bliss v. Brainard, 41 N. H. 256. But this does not imply that courts will not sustain contracts that would not be valid if made within their jurisdiction, or will not enforce rights that could not be acquired there. Thus, for example, the courts of Pennsylvania have always enforced contracts for a higher rate of interest than would be valid under the laws of this state: Ralph v. Brown, 3 W. & S. 395; Wood v. Kelso, 27 Pa. 243; Irvine v. Barrett, 2 Gr. 73.

The contract in the present case does not directly affect the state or its citizens in any way. Nor is it in any way contrary to justice or morality. It may be doubted whether it is even so far contrary to the policy of the state that it would have been invalid if it had been made here. It has some exceptional features, which, it is argued, take it out of the ordinary rules governing the contracts of common carriers, and the case of Coup v. Railroad Co., 56 Mich. 111, is a strong authority for that position. But without stopping to discuss that point, which our general view renders unnecessary, it is sufficient to say that even if it would not have been valid if made here, its enforcement as a New York contract does not in any way derogate from the laws of Pennsylvania, or injure or affect the policy of the state, any more than would a foreign contract for what would be usurious interest here, and that as already said the courts have never hesitated to enforce.

The argument of duress may be briefly dismissed for want of

any evidence in the case to sustain it.    There is no evidence
that defendant was unwilling to accept the ordinary and usual
rates for the transportation of plaintiff's cars and property.    If
they had been offered by plaintiff and refused, there might
have been some ground for the present argument, though in
view of the peculiar nature of the property and the special fa-
cilities required, even that is far from clear.    But in fact
plaintiff got a large reduction of rates, and part of the consid-
eration for such reduction was the agreement that he should
be his own insurer against loss by accident.    There was noth-
ing compulsory about such a contract, and plaintiff comes now
with a very bad grace to assert a right that he expressly relin-
quished for a substantial consideration.

The learned court below was right in entering judgment for
the defendant on the facts found in the special verdict.

Judgment affirmed.


OPINION DISSENTING, MR. JUSTICE WILLIAMS:

I dissent from the judgment in this case because I cannot
agree that a well-settled rule of public policy of this common-
wealth must give way to considerations of mere comity.    The
contract set up as a defence to this action is a release to a com-
mon carrier from liability for its own negligence.    It is well
settled in this state that such a release is against public policy.
Comity does not require more of us than to give effect to the
lex loci contractus, when not subversive of the public policy of
our own state.    This has been distinctly held by the Court of
Appeals of New York, in which this release was executed, and
in whose behalf comity is asked.    I would follow the Court of
Appeals, because comity can require no more of us in any given
case than the courts of the place of the contract would yield
to us for comity's sake ; and because I believe the rule to rest
on solid ground.

MR. JUSTICE STERRETT concurred in this dissent.