### O'BRIEN v. CHICAGO & N. W. RY. CO.

#### (Circuit Court, N. D. Iowa, C. D. June 23, 1902.)

1. RAILROADS—REGULATION BY STATE—ABROGATION OF COMMON-LAW RULE AS TO FELLOW SERVANTS.

   A state, through whose legislative consent alone a railroad company derives the right to construct and operate a railroad within its territory, may attach to such consent conditions for the protection of the lives and property of those who may be subjected to risk through the operations of such roads, and as one of such conditions it may lawfully abrogate as to railroad companies, by a general law applicable to all companies operating roads within the state, the common-law rule which exempts a master

---

¶ 1. See Master and Servant, vol. 34, Cent. Dig. § 359.

from liability for injuries resulting from the negligence of fellow servants.

**2. SAME—KILLING OF EXPRESS MESSENGER IN WRECK—VALIDITY OF CONTRACT EXEMPTING FROM LIABILITY UNDER IOWA STATUTE.**

Code Iowa, § 2071, provides that every corporation operating a railway shall be liable to every person, including employés, for the consequences of the neglect or mismanagement of the company's servants, and that no contract which restricts such liability shall be legal or binding. Section 2074 declares that no contract, receipt, rule, or regulation shall exempt any railway company engaged in transporting persons or property from the liability of a common carrier, and Acts 27th Gen. Assem. c. 49, provides that no contract of insurance, relief, benefit, or indemnity in case of injury or death, entered into prior to the injury, shall constitute any bar or defense to any action based on the provisions of Code, § 2071. By a contract made in Iowa, between an express company and a messenger employed by it, the latter, in consideration of his employment, agreed to assume all risk of accidents and injuries resulting from the gross or other negligence of any corporation or person engaged in operating any railroad, or any employé thereof, whether resulting in death or otherwise, and authorized the company to contract with any railway company on his behalf that no claim should be made against it by him or his representatives on account of any such injury. By a second contract made in accordance with such authority between the express company and a railroad company, the latter agreed to furnish cars for the use of the former over its lines, and the express company agreed to protect the railroad company against liability for injuries to express messengers or agents while being transported over its line in connection with their duties. *Held*, that while such contracts would be effective to protect the railroad company from liability at common law, under such statutory provisions, declaratory of the public policy of the state, they were invalid, and constituted no defense to an action against it for the death of the messenger occurring in the state of Iowa by reason of the wrecking of the express car in which he was employed through the negligence and want of ordinary care of defendant or its servants, whether the messenger be regarded as an employé of the defendant or not.

On Demurrer to Answer.

Wright & Nugent and Healy Bros., for plaintiff.

Lyon & Lyon, for defendant.

SHIRAS, District Judge. In the petition filed in this case it is averred, in substance, that on and prior to the 1st day of August, 1899, one J. J. O'Brien was an employé of the American Express Company; that the express company was engaged in transacting business in the state of Iowa, and by virtue of a contract with the defendant, the Chicago & Northwestern Railway Company, the latter undertook the transportation of the express matter destined for points upon its line in the state of Iowa, by furnishing cars equipped for that work, in which the express company placed the goods and property intrusted to it, and placed in said cars in charge of the goods therein contained its employés known as "express messengers," who were carried in such cars over and along the line of the defendant railway company; that on the 1st day of August, 1899, the said J. J. O'Brien was placed, as an express messenger and employé, in charge of an express car containing goods intrusted to the American Express Company, which formed part of a train run by the defendant company across the state of Iowa; that a short distance from the city of Boone, Iowa, the train was derailed, the ex-

press car was badly broken up, and the messenger, J. J. O'Brien, received injuries causing his death; it being further averred that the derailment of the train was caused by several acts of negligence on part of the railway company and its employés, and by reason thereof the plaintiff, as administratrix of the estate of J. J. O'Brien, deceased, seeks to recover damages against the railway company. To this petition the defendant railway company filed an answer denying the several acts of negligence charged against it, and averring as a further defense that on the 5th day of January, 1894, at Missouri Valley, Iowa, the said J. J. O'Brien made and signed a written application for a situation in the employ of the American Express Company, to which was attached what is called an "accident release," whereby said applicant stipulated that, in consideration of his employment, he assumed all risk of accidents and injuries resulting from the gross or other negligence of any corporation or person engaged in operating any railroad, vessel, or vehicle, or of any employé thereof, whether resulting in death or otherwise, and further agreed to indemnify the American Express Company against any claims made against it growing out of the death or injury of the applicant, and also to execute releases for all injuries received, and further authorized the express company to contract in the name and on the behalf of the applicant with any railway or other corporation or person that neither the applicant nor any one claiming under him as personal representative or otherwise would make any claim for compensation because of any injury sustained by applicant while in the employ of the company. It is also averred in the answer that on the day of the accident in question the defendant had been engaged in operating a line of railway from Clinton, Iowa, to Omaha, Neb.; that in April, 1899, the defendant entered into a contract with the American Express Company, whereby it was agreed that the railway company would furnish express cars for the use of the express company on the railway line between Clinton, Iowa, and Omaha, it being further provided in said contract that the express company should protect the railway company, and hold it harmless against all liability that the railway company might be under to the officers, agents, or messengers of the express company for any injury they might sustain while being transported over the railway line in connection with their duties to the express company; and therefore, under the terms of these contracts, the defendant company claims it cannot be held liable in this action. To the portions of the answer setting up these contracts the plaintiff demurs on several grounds, thus presenting the question whether these contracts are a legal bar to the right of action declared on by plaintiff, assuming that the derailment of the train and the resultant injuries were due to the negligence of the railway company.

By the ruling of the supreme court in Railway Co. v. Voight, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560, it is settled that one occupying the position of express messenger under the circumstances surrounding O'Brien at the time of his death cannot be held to be a passenger upon the train in such sense as to cast upon the railway company the high degree of care due from a common carrier for

hire to its passengers; but that case does not go to the extent of holding that the company, in the absence of a valid contract to that end, is wholly exonerated from the duty of exercising ordinary care for the protection of express messengers whom it knowingly receives upon its trains. In the course of the opinion in the cited case it is said:

"The relation of an express messenger to the transportation company, in cases like the present one, seems to us to more nearly resemble that of an employé than that of a passenger. His position is one created by an agreement between the express company and the railroad company, adjusting the terms of a joint business,—the transportation and delivery of express matter. His duties of personal control and custody of the packages, if not performed by an express messenger, would have to be performed by one in the immediate service of the railroad company. And, of course, if his position was that of a common employé of both companies, he could not recover for injuries caused, as would appear to have been the present case, by the negligence of fellow servants."

Under the principles of the common law, the common master is not responsible to an employé for injuries resulting from the negligence of a co-employé, but the master is responsible for the exercise of reasonable care in supplying the means and appliances necessary to be used in carrying on the business of the master. Hough v. Railway Co., 100 U. S. 213, 25 L. Ed. 612. The common-law exemption from liability for the negligence of co-employés is materially changed with respect to railway companies by the provisions of section 2071 of the Code of Iowa, and therefore the acts of negligence charged in the petition, if they are sustained by the evidence, are sufficient to impose liability for the result thereof—the death of O'Brien—upon the defendant, unless such liability can be evaded by reason of the provisions of the contracts entered into between O'Brien and the express company and between the express company and the defendant railway company. The provisions of these contracts and the relation of the parties thereto are substantially the same as those involved in the already cited case of Railway Co. v. Voight, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560; and as the validity thereof, under the rules of the common law, was sustained by the opinion given in that case, it follows that in this case the validity thereof cannot be questioned upon common-law principles, and the point at issue is narrowed down to the question, whether the provisions of the statutes of Iowa render these contracts invalid and void in so far as they are intended to relieve the railway company from all liability for the results of the negligence of the company and its employés to one occupying the position of express messenger upon a train operated by the railway company within the state of Iowa.

The contract with O'Brien was entered into in Iowa, the service in which he was engaged at the time of the accident was being performed in Iowa, the acts of negligence charged against the defendant happened in Iowa, the accident and death of O'Brien occurred in Iowa, and the suit is pending in Iowa, and it is clear, therefore, that the validity of the contracts pleaded by defendants, so far as that depends upon the local law, is to be determined by the provi-

sions of the law of Iowa. If, by the settled public policy of the state, or by express statutory enactment, contracts whereby railway companies seek to escape from the consequences of failures on their part to exercise the care required of them towards persons in their employ or rightfully on their trains are declared to be invalid, then, of necessity, such contract will not constitute a defense to an action to recover for injuries caused to any one who comes within the protective provisions of the state law. An examination of the legislation of the state shows that at an early day the legislature recognized the dangers inherent in the business of railroading, and the peculiar risks caused to all who were called upon to be in and about the engines, cars, and trains when the same were operated by the powerful agency of steam, and the injustice of applying the common-law rule that exempts the master from liability for injuries caused to one employé by negligence of others engaged in the same general employment was quickly perceived. This rule of the common law is based upon the proposition, as is said by the supreme court in Hough v. Railway Co., 100 U. S. 213–217, 25 L. Ed. 612, 615, that "it is implied in the contract between the parties that the servant risks the dangers which ordinarily attend or are incident to the business in which he voluntarily engages for compensation; among which is the carelessness of those, at least in the same work or employment, with whose habits, conduct, and capacity he has, in the course of his duties, an opportunity to become acquainted, and against whose neglect or incompetency he may himself take such precautions as his inclination or judgment may suggest." This rule of the common law grew up in connection with the ordinary business avocations of life, long prior to the introduction of railways, in which avocations there was afforded, ordinarily, better opportunity to the employé to become acquainted with the habits, conduct, and carefulness of those with whom he was associated than was possessed by the master; and fair opportunity was given to him to protect himself against the dangers resulting from their carelessness, either by complaint to the master or by taking the precautions rendered necessary by the actions of the co-employé, and therefore there is justice and equity in the rule when confined to the classes of business out of which it had its birth. What opportunity is given to the railway employé to become acquainted with the habits and conduct of the thousands of other employés engaged by the common master? What possible knowledge can the brakeman on one train have of the habits and conduct of the crews in charge of the numerous trains that are daily passing over the same line and whose negligence may cause injury to him at any moment? What possible knowledge can the crew of the train have of the habits and conduct of the station agents, telegraph operators, yardmen, sectionmen, and other employés engaged over a line of hundreds of miles in length, but whose careful co-operation is needed to secure the reasonable safety of all who are rightfully on the moving train? Doubtless it was such considerations that led the legislature of Iowa, fully 40 years since, to enact the rule that as to all matters connected with the operations of railways, the company should be liable for injuries caused by the neglect or mis-

management of its agents or servants to any person, including its own employés. The right to construct and operate railroads by the agency of steam in the state of Iowa is derived from the legislation of the state, and in conferring this right and providing for the mode of its exercise the state has the right to make such provisions as it deems best to secure the safety of the life and limbs of those who may be subjected to risk through the operations of the railways of the state. Hartford Fire Ins. Co. v. Chicago, M. & St. P. Ry. Co. (C. C.) 62 Fed. 904; Railway Co. v. Mathews, 165 U. S. 1, 17 Sup. Ct. 243, 41 L. Ed. 611; Hartford Fire Ins. Co. v. Chicago, M. & St. P. R. Co., 175 U. S. 91, 20 Sup. Ct. 33, 44 L. Ed. 84. In the latter case it is said:

"Generally speaking, the right of a railroad corporation to build its road and run its locomotive engines and cars thereon, within any state, is derived from the legislature of the state; and it is within the undisputed powers of that legislature to prescribe the precautions that the corporation shall take to guard against injuries to the property of others by the running of its trains, as well as the measure of its liability in case such injuries happen. Among the most familiar instances of the exercise of this power are statutes requiring a railroad corporation to erect fences between its road and adjoining lands, and subjecting it to either single or double damages for any injury to cattle or other animals caused by its neglect so to do, * * * and statutes making a railroad corporation liable for damages to property of others from fire set by sparks from its locomotive engines, either independently of negligence on its part or in case of such negligence only."

If the state, for the protection of the property of its citizens, has the right to impose upon the railway companies liability for injury thereto, resulting from the operations of the railway trains, certainly it must have the right to throw a like protection around the life and limb of its citizens; and thus we are brought to a consideration of the provisions of the laws of the state upon this subject, which constitute sections 2071 and 2074 of the Code of Iowa, and chapter 49 of the Acts of the 27th General Assembly, which are as follows:

"Sec. 2071. Liability for Negligence or Wrongs of Employés: Every corporation operating a railway shall be liable for all damages sustained by any person, including employés of such corporation, in consequence of the neglect of the agents, or by any mismanagement of the engineers or other employés thereof, and in consequence of the wilful wrongs, whether of commission or omission, of such agents, engineers, or other employés, when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding."

"Sec. 2074. Contract or Rule Limiting Liability: No contract, receipt, rule or regulation shall exempt any railway corporation engaged in transporting persons or property from the liability of a common carrier, or carrier of passengers, which would exist had no contract, receipt, rule or regulation been made or entered into."

Chapter 49: "That section numbered two thousand and seventy one (2071) of the Code be amended by adding at the end thereof the following: Nor shall any contract of insurance, relief, benefit, or indemnity in case of injury or death entered into prior to the injury, between the person so injured and such corporation, or any other person or association acting for such corporation, nor shall the acceptance of any such insurance, relief, benefit, or indemnity by the person injured, his widow, heirs, or legal representatives after the injury from such corporation, person, or association, constitute any bar or defense to any cause of action brought under the provisions of this section, but

nothing contained herein shall be construed to prevent or invalidate any settlement for damages between the parties subsequent to injuries received."

By the provisions of section 2071, the railway companies are declared to be liable to any person, including their employés, for injuries resulting from the neglect, mismanagement, or willful wrongs of the servants or agents of the company connected with the operation of the railways. Is there any reason why express messengers are to be excepted out from the protection intended to be created by this section of the Code? The supreme court, in the Voight Case, already cited, held that such messengers were not passengers upon the railway trains, but rather occupied the position of employés of both the express and railway companies. If such is their legal position, then, being an employé of the railway company, the messenger clearly comes within the spirit as well as the language of section 2071, and the railway company is made liable to him for the consequences of the neglect or mismanagement of the employés of the company in the operations of the railway, and is certainly liable also for acts of negligence in the performance of the duties which the common law imposes upon the master, and which cannot be evaded by delegating the performance thereof to some one in his employ. But disregarding mere names with respect to the relation existing between the messenger and the railway company, what are the legal obligations imposed upon the company, growing out of the position occupied by the messenger? By virtue of the contract between the express and railway companies the latter company agrees that the messenger shall be in the express car during the time it is being transported over the line of railway, and further agrees that for the compensation to be paid by the express company it will transport the car and its contents over its line. The messenger is therefore rightfully in the car, with the knowledge of the railway company, and the company, under the general rule of the common law, is bound to use ordinary care in the transportation of the express car, because it has agreed that the messenger shall be transported in that car, and, as the car is wholly under its control and management, it owes to the messenger the duty of exercising ordinary care to protect him from injuries arising from carelessness in the transportation of the car by the railway company. In addition to the obligation imposed by the common law, section 2071 of the Code of Iowa declares that a railway company shall be liable for all damages sustained by any person resulting from the neglect or mismanagement of any servant, agent, or employé of the company in connection with the operation of the railway. In Rose v. Railway Co., 39 Iowa, 246, the state supreme court, in construing this statutory provision, held that it could not be limited to employés only, but that "the language of the enactment includes all classes of persons sustaining damages from the negligence of the employés of the railroad company." It cannot well be doubted that it was the knowledge on part of the express and railway companies that under the rule of the common law a railway company would be liable to an express messenger receiving injuries when in the express car, caused by the negligence of the company as master,

and under the provisions of the state statute would be liable for injuries caused by the negligence of the company's employés connected with the operation of the railway, which led these companies to enter into the several contracts between the express companies and their messengers and between the express company and the railway company which are relied on in this case to defeat defendant's action. If the relation between the messenger and the railway company was such that no liability existed on part of the company for injuries received by the messenger, then no need existed for the exceeding care and ingenuity exhibited in the preparation of the contract of employment which the messenger is required to sign, and which, taken in connection with the contract between the express and railway companies, is intended to wholly free the latter company from all liability for the consequences of negligence, gross or otherwise, in handling the express car, resulting in injury to the messenger placed in charge thereof. To escape this liability is the purpose of the contracts in question, and under the doctrine announced by the supreme court in the Voight Case, so far as the common law is concerned, these contracts are to be held valid, and to be sufficient to defeat the liability which otherwise would be imposed upon the railway company for the injuries resulting to the messenger from negligence in handling and transporting the car occupied by him. What effect, however, upon their validity, have the provisions of the statutes of Iowa already cited? In section 2071 it is provided that railway corporations shall be liable to every person, including employés, for the consequences of the neglect or mismanagement of the company's servants, and, further, that "no contract which restricts such liability shall be legal or binding." Section 2074 declares that no contract, receipt, rule, or regulation shall exempt any railway company engaged in transporting persons or property from the liability of a common carrier; and chapter 49 of the Acts of the 27th General Assembly declares that no contract of insurance, relief, benefit, or indemnity in case of injury or death, entered into prior to the injury, shall constitute any bar or defense to any action based on the provisions of section 2071 of the Code. Thus it is declared by the statutory enactment to be the public policy of the state that corporations engaged in the railway business in this state cannot, by contract, free themselves from the liability attaching to them as carriers of passengers and property; that they are liable to every person, including their own employés, for injuries resulting from the neglect, mismanagement, or willful wrongs of the agents or employés of the company engaged in the operation of the railway, and that no contract seeking to restrict such liability shall be legal or binding; and, finally, that such liability so imposed upon the railway companies cannot be evaded through any contract of insurance, benefit, or indemnity entered into prior to the injury complained of. In the face of these provisions of the state statutes, it is impossible to give any force or validity to the contracts relied on by the defendant in this case. Their clear purpose is to attempt to free the railway company from the liability which the state has seen fit to impose upon the company in the conduct of its business

in Iowa, and which the state statute declares cannot be evaded by contracts entered into in violation of the provisions of the statutes, and it must be held that the clauses of the contracts which are intended to free the company from liability for injuries caused by its negligence or that of its employés to express messengers, when engaged in their duties upon the trains of the company in Iowa, are invalid, and of no legal force or effect.

At the request of the defendant, and to secure a full presentation of the question upon the record, the final ruling thereon will be reserved until the trial of the case upon the facts, when the record can be made upon the offer of the contracts in evidence.