### CLOUGH v. GRAND TRUNK WESTERN RY. CO.

(Circuit Court of Appeals, Sixth Circuit. July 17, 1907.)

No. 1,633.

1. CARRIERS—CIRCUS TRAIN—TRANSPORTATION—CONTRACT—PUBLIC POLICY.

A circus company, owning its own cars, contracted with a railroad company for the hire of motive power and the use of tracks and trainmen, to be considered as the circus company's servants, for the transportation of the train from one place to another; the contract exempting the railroad company from liability for injuries to any person or persons using the train from whatsoever cause. *Held* that, the railroad company being under no legal duty to move the circus company in the manner specified, the contract was not contrary to public policy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 648.]

2. SAME—INJURIES TO EMPLOYÉ—CARRIER AND PASSENGER—RELATION.

Where a carrier leased motive power, the use of its tracks, and train operatives to a circus company, under a contract exempting the carrier from liability for all injuries, the relation of passenger and carrier did not exist between the railroad company and an employé of the circus company, traveling solely by virtue of his employment, who was not a party to such transportation contract, so as to entitle such employé to recover against the railroad company for injuries sustained in a collision between two sections of the circus train.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 977.

Who are passengers, see note to Chamberlain v. Pierson, 31 C. C. A. 164.]

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

Action for injury to an employé of a traveling circus company while riding in a train of cars belonging to his employer, drawn, under a special contract, over defendant's road. The circus company owned as a part of its equipment the cars necessary for the transportation of its animals, property, and employés from place to place, and through its own servants loaded and unloaded these cars to suit its own convenience. For the hauling of these cars upon a

155 F.—6

schedule arranged to suit its business, it contracted with the defendant company for motive power and servants to operate same and trainmen to operate the train. These cars were 36 in number, and were divided into two sections of same train. Plaintiff, while sleeping in one of the sleeping coaches provided by his employer for the use of his employés exclusively, was hurt by a rear-end collision betwen the two sections of the circus train. Whether this collision was a blameless accident, or was due to some defect in the brakes on the cars owned by the circus company, or some defect in one of the engines owned by the defendant company, or was due to some negligence of one or other of the servants engaged in the operation of the train itself, does not appear, and no effort was made by either side to explain. The plaintiff said below, and here repeats, that he was a passenger, and that proof of an accident and injury makes a prima facie case for him. The defendant denies that relation and relies upon the special terms of the arangement under which it was hauling this special circus train. That special contract, among other things, provided that the railroad company should hire the motive power and men to operate same and the right to use the tracks, to an extent necessary to haul said cars, and that it should furnish train conductors, brakemen, engineers, and firemen, but that the same should, while engaged in the operation of the circus company's train, be held to be the "servants" of the circus company, "and to be operating said motive power, cars, and trains under the order, direction, and control" of the circus company. To enable the defendant to operate its own trains without interference by the circus train and for the safety of all concerned, it was further provided that there operations should be subject also to the rules and regulations and orders of the defendant's train dispatcher. In consideration of the special character of this contract, and the reduced rates given, it was stipulated that the railroad company should not be liable to the circus company, or to "any person or persons whomsoever using said train or carried under this contract for any loss, injury or damage that may happen * * * no matter how the same may be caused, all risk whatsoever being taken and assumed by the" circus company, called the contractors. By another clause the circus company agrees to assumed all risk of loss or damage, no matter how caused, "which may be sustained by any person, animal, or property of any kind while being carried" and to "indemnify, protect and save harmless" the said railroad company from any loss, damage, or expense which it may bear or suffer arising out of any claim by any person on account of injury, or loss of property. Upon the conclusion of all the evidence, the court below instructed a verdict for the defendant in error.

John H. Brogan and Charles Hatch, for plaintiff in error.
Harrison Geer, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

If the contract under which the Wallace Circus was being transported over the railway of the defendant was a valid contract, the relation of the railway company to the circus company was not that of a common carrier at all. That the railway company was under no common-law obligation to move the circus company over its line in the manner it was being transported at the time of the injury to the plaintiff in error must be conceded. If the railway company was under no statutory or common-law obligation to render the special service it was called upon to render there were no reasons of public policy which forbade the rendition of such service upon such terms as the parties might stipulate. The right to make special stipulation under such conditions has been recognized and applied in a number of cases

substantially like the case at bar when circus trains were hauled under special agreements relieving the company from carrier's liability. Coup v. Wabash, etc., Ry. Co., 56 Mich. 111, 22 N. W. 215, 56 Am. Rep. 374; Forepaugh v. Delaware, etc., Ry. Co., 128 Pa. 217, 18 Atl. 503, 5 L. R. A. 508, 15 Am. St. Rep. 672; Robertson v. Old Colony R. R. Co., 156 Mass. 525, 31 N. E. 650, 32 Am. St. Rep. 482; Chicago, etc., Ry. Co. v. Wallace, 66 Fed. 506, 14 C. C. A. 257, 30 L. R. A. 161; Wilson v. Atlantic, etc., R. R. Co. (C. C.) 129 Fed. 774. The same freedom of contract in respect to the transportation of express matter and express messengers has been recognized repeatedly. B. & O. Ry. v. Voight, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560, and cases therein cited.

But it is urged with much force that Clough, the injured plaintiff in error, was not a party to the contract between the circus proprietors and the railway company, and therefore not affected by it. It has been said also that he neither agreed to relieve the railway company from liability for negligence while being carried upon the circus train nor bargained away by any agreement with the circus company his right to hold the railway company or the circus company liable for any negligence by which he might be injured while being transported as an employé of the latter. Upon these grounds it has been urged that the Voight Case has no application, because there the messenger had expressly assumed in his contract with the express company the risk of all injury he might sustain while in its service and to assume and ratify any agreement the express company had made or might make releasing any transportation company from liability to any of its employés. It is unnecessary to consider whether an express messenger's right of action to recover for carrier's negligence would depend upon any personal agreement made by him. In the Voight Case the messenger's release to the express company was a fact in the case, and as that inured to the benefit of the railway company it was unnecessary to go farther. See, also, Long v. Lehigh Valley Co., 130 Fed. 870, 65 C. C. A. 354, where it was held that the messenger would be presumed to know and assent to any contract between the express company and the railway company under which he was to be transported.

In Brewer v. N. Y., etc., R. Co., 124 N. Y. 59, 26 N. E. 324, 11 L. R. A. 483, 21 Am. St. Rep. 647, it was held that the messenger was not affected by the contract between the express company and the railway company by which he was made to assume the hazard of his carriage; he having no knowledge of the contract.

The express messenger cases are all distinguishable from the case at bar in the character of the service which the railway company undertook to render. In the express company case the car in which the express matter was carried and the messenger traveled was furnished by the railway company, and the car itself was part of a train under the exclusive control of the carrier. Under the contract here involved, the trains were made of cars furnished and loaded by the circus company. These trains were pulled by engines which were the general property of the railway company, but the special property of the circus company under a contract of hiring. The trains were to be hauled over the tracks of the defendant in error, but only upon a

special contract for the use of the tracks to the extent necessary. The engine and the train were under the control of servants of the railway company, but under a contract by which they became for the purpose of moving this train the special servants acting under orders and directions and in behalf of the circus company.

Neither was such a contract one which disabled the railway company from discharging its general duties as a common carrier. The arrangement fell far short of that sort of transfer of corporate property which is involved in the leasing of one railway to another or to a stranger. In the absence of statutory power, a leasing which disables the lessor from the continued exercise of its corporate duties is ultra vires. Arrowsmith v. Nashville, etc., R. Co. (C. C.) 57 Fed. 165, and cases there cited. The stipulation between the railway company and the circus company involved only the temporary use of the company's tracks for the single purpose of passing its train over the rails from one point to another and the use of a limited amount of its motive power to haul these trains. This did not disable the company from the usual exercise of its corporate power. We see no illegality in a railway company permitting a use of its tracks by another which does not substantially disable it from the usual and ordinary performance of its corporate duties to the public. 2 Elliott on Railroads, § 451; Union Pac. R. Co. v. Chicago, etc., Ry. Co., 163 U. S. 564, 16 Sup. Ct. 1173, 41 L. Ed. 265. Neither does the fact that the enginemen and trainmen were operating this train at the time of this collision affect the question of liability to this plaintiff. They were the general servants of the defendant in error, but on this occasion they were the special servants of those who hired them. For the time the railway company had parted with its control and direction of these servants and was not responsible for their acts to either the circus company or those in its service whose only right upon this train was by virtue of their relation to the circus company. Byrne v. Railway Co., 61 Fed. 605, 9 C. C. A. 666, 24 L. R. A. 693; Hardy v. Shedden Co., 78 Fed. 610, 24 C. C. A. 261, 37 L. R. A. 33. This train under this contract was at the time being run or operated by the special servants of the circus company, and their acts were the acts of that contractor, and not the acts of the railway company.

The plaintiff paid no fare, and his only right upon the train was by virtue of the contract and arrangement which his employers had with the railway company. By the terms of that agreement his employers assumed all risks of transportation and undertook themselves as hirers of motive power to move their own train under trackage rights acquired under same agreement.

As the relation of passenger and carrier did not exist between plaintiff and the railway company, an action for negligence based only upon that relationship cannot be maintained.

Judgment affirmed.