### SAGER v. NORTHERN PAC. RY. CO.

(Circuit Court, D. Minnesota, Fourth Division. December 16, 1908.)

1. CARRIERS (§ 40*)—NATURE OF TRANSPORTATION—CIRCUS TRAINS.

   A carrier is under no common-law obligation to furnish motive power and servants to move a circus company's train over the carrier's road at reduced rates.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 120; Dec. Dig. § 40.*]

2. CARRIERS (§ 307*)—MOVEMENT OF CIRCUS TRAIN—SPECIAL CONTRACT—PUBLIC POLICY.

   A special contract between a carrier and circus company to furnish motive power, etc., to move the circus train over the carrier's road at reduced rates, and exempting the carrier from liability for claims and damages on account of accident or injury occasioned by the carrier's negligence, was not contrary to public policy.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1253; Dec. Dig. § 307.*]

3. CARRIERS (§ 307*)—SPECIAL CONTRACTS—EXEMPTION FROM LIABILITY FOR NEGLIGENCE—STATUTES.

   Rev. Codes N. D. 1905, § 4400, providing that every railroad doing business in the state should be liable for damages to any employé in consequence of any negligence of its agents or by any mismanagement of its engineers or other employés, and that no contract restricting such liability should be legal or binding, was a fellow-servant statute merely, and did not invalidate contracts restricting the liability of carriers for damages occasioned to persons not their employés by the railroad company's negligence in the rendition of special services.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1252; Dec. Dig. § 307.*

   Relation of carrier to persons carried under contract with their employers, see note to Chicago & N. W. Ry. Co. v. O'Brien, 67 C. C. A. 427.]

4. CARRIERS (§ 13*)—LIMITED LIABILITY—CONTRACTS—STATUTES.

   A circus train transportation contract providing that the carrier should furnish motive power, etc., and in consideration of a reduced rate should not be liable for injuries caused by its negligence in performing the contract, was not invalidated by Rev. Codes N. D. 1905, §§ 4333, 4334, prohibiting carriers from giving undue or unreasonable preferences to persons or localities with respect to any particular description of traffic.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 22; Dec. Dig. § 13.*]

5. CARRIERS (§ 307*)—CIRCUS TRAIN—TRANSPORTATION CONTRACT—VALIDITY.

   A carrier's contract to transport a circus company's train at a reduced rate, in consideration of a release from all liability for claims and damages on account of accident or injury occasioned by the negligence of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the railroad company in performing the contract, and from all damages sustained or suffered by any and all persons composing or attached to the circus company while in or on the train, was valid as between the railroad company and the circus company.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1252; Dec. Dig. § 307.*]

6. CARRIERS (§ 307*)—LIMITED LIABILITY—CIRCUS TRAIN—CONTRACT—INJURY TO CIRCUS EMPLOYÉ—DEFENSES.

A circus train transportation contract exempting the carrier from all liability to the circus company and its employés for injuries sustained in the carrier's performance of the contract is not a defense, as a matter of law, to an action by a circus employé having no knowledge of such contract and not having authorized the circus company to bind him thereby, to recover from the carrier for injuries caused by the carrier's negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1256; Dec. Dig. § 307.*

Liabilities to employés of others carried under contract with carrier, see notes to Chamberlain v. Pierson, 31 C. C. A. 164; Clough v. Grand Trunk Western R. Co., 85 C. C. A. 5.]

At Law. On demurrer to the separate defense alleged in the answer.

This case is a civil action brought to recover damages for personal injuries alleged to have been sustained by the plaintiff by reason of the negligence of the employés of the railway company.

The case was originally instituted in the state court, and removed to this court by the defendant on the ground of diverse citizenship. It is alleged in the complaint that at the time the plaintiff received the injuries complained of he was an employé of the Gollmar Bros.' circus, lawfully riding in a sleeping car, which with other cars belonging to the circus company was being drawn by one of the defendant's engines into the city of Bismarck, N. D., when the circus train came into collision with another train belonging to and operated by the defendant on the same track, running in an opposite direction, thereby causing a head-end collision of the trains, whereby the plaintiff was injured. The defendant in its answer pleads the general issue, and interposes as a separate defense a contract between itself and the Gollmar Bros., entered into on or about the 7th day of March, 1908, whereby Gollmar Bros., in consideration of the transportation of their circus train between certain points in the state of North Dakota at reduced rates by the defendant railway company, agreed to release the railway company from any and all liability for claims and damages on account of accident or injury occasioned by the negligence of the railway company. This contract further stipulated that the railway company should be absolved from all damages which might be sustained or suffered by any and all persons composing or attached to the circus company while in or on said train. It is not alleged in the answer that the plaintiff had any knowledge of the provisions in this contract between his employers and the railway company, which were evidently designed to deprive him of his right to maintain an action for damages against the railway company, in the event of his injury while on the train. To this special defense the plaintiff has interposed a demurrer, upon the ground that it does not state facts sufficient to constitute a defense. The question of law presented is whether the plaintiff can maintain this action, notwithstanding the provisions in the contract designed to absolve the railroad company from liability.

Thomas D. Schall and Freeman P. Lane, for plaintiff.
C. W. Bunn and Charles Donnelly, for defendant.

PURDY, District Judge (after stating the facts as above). It must be conceded that the railroad company was under no common-law ob-

ligation to move the circus company's train over its lines of road in the manner in which it was being transported at the time the plaintiff was injured. It must also be conceded that there is no principle of the common law which forbids the making of contracts of this character as against public policy. These propositions are settled by abundant authority. Coup v. Wabash, etc., Ry. Co., 56 Mich. 111, 22 N. W. 215, 56 Am. Rep. 374; Forepaugh v. Delaware, etc., Ry. Co., 128 Pa. 217, 18 Atl. 503, 5 L. R. A. 508, 15 Am. St. Rep. 672; Robertson v. Old Colony R. R. Co., 156 Mass. 525, 31 N. E. 650, 32 Am. St. Rep. 482; Chicago, etc., Ry. Co. v. Wallace, 66 Fed. 506, 14 C. C. A. 257, 30 L. R. A. 161; Wilson v. Atlantic, etc., Ry. Co. (C. C.) 129 Fed. 774; Long v. Lehigh V. Ry. Co., 130 Fed. 870, 65 C. C. A. 354; Clough v. Grand Trunk & Western Ry. Co., 155 Fed. 81, 85 C. C. A. 1, 11 L. R. A. (N. S.) 446; Railway Company v. Voigt, 176 U. S. 505, 20 Sup. Ct. 385, 44 L. Ed. 560.

1. It is contended, however, that the defendant, in this case the Northern Pacific Railway Company, was under a statutory disability which operated to prevent it from making the contract in question. In support of this contention it is pointed out that the contract was one which was to be performed entirely within the state of North Dakota, and that section 4400 of the Statutes of that state absolutely prohibits the making of all contracts of this character. That section reads as follows:

"Sec. 4400. Every railroad company organized or doing business in this state shall be liable for all damages done to any employé of such company, in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employés, to any person sustaining such damages; and no contract which restricts such liability shall be legal or binding." Rev. Codes N. D. 1905.

I am referred to no decision of the Supreme Court of North Dakota wherein this statute has been construed by that court, but counsel for the plaintiff have cited several cases from Kansas and Iowa construing statutes of those states which it is claimed are similar to, if not identical with, the North Dakota statute above quoted. An examination of those cases is therefore rendered necessary.

In the first case cited, Kansas Pacific Ry. Co. v. Peavey, 29 Kan. 169, 44 Am. Rep. 630, the railroad company had made a contract in advance with one of its employés for a waiver and release of the statutory liability imposed upon the railroad company. The Supreme Court of Kansas held the contract void, and no defense to an action brought by the employé against the railway company for damages sustained by him in consequence of the neglect or mismanagement on the part of the company's employés. In this case the contract was clearly within the inhibitions of the statute which forbid railroad companies to restrict by contract or otherwise their liability for damages done to an employé in consequence of the negligence of a fellow servant.

The case of Sewell v. Atchison, T. & S. F. Ry. Co., 96 Pac. 1007 (Supreme Court of Kansas, May 9, 1908), was one in which an express messenger had entered into contract with an express company whereby he agreed to absolve the express company and the railroad com-

pany from liability for any injury occurring to him while traveling over the railway company's lines of road as an express messenger. The Supreme Court of Kansas upon the first hearing of this case held that the contract was legal and a bar to the action for damages by the widow of Sewell against the railway company. In this opinion the court followed the decision of the Supreme Court of the United States in B. & O. S. W. Ry. Co. v. Voigt, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560.

Upon the rehearing of that case, the attention of the court was directed to the following provision of the state statute:

"That railroads in this state shall be liable for all damages done to persons or property when done in consequence of any negligence on the part of the railroad companies." Laws Kan. 1870, p. 197, c. 93.

The court thereupon decided that the contract between Sewell, the express messenger, and his employer, the express company, whereby he agreed to release the express company and the railroad company from all liability for damages occasioned by their negligence, was void, because it was prohibited by the state statute. The point upon which the decision of the court rested is made clear by the following excerpt from the opinion:

"The statute of 1870, equally with that of 1874, was 'made to carry out measures of general policy,' and was 'intended generally to protect the public interests' and 'to vindicate public morals.' It differs from it, mainly, in being more general in its terms, and of broader scope, and in not being exclusively for the protection of railroad companies. The argument based upon the relation of master and servant—the inequality of footing upon which they deal—fails in the case of the earlier act, except as its protection might be invoked by an employé. An express messenger, although employed only by the express company, is within the protection of that act. As to him, it is a measure guarding his life and safety while engaged in a business fraught with peculiar peril. While he does not deal directly with the railroad company, his contract is made with his employer, with whom he cannot treat on terms of perfect equality. 96 Pac. 1016."

The cases of Rose v. Des Moines Valley Ry. Co., 39 Iowa, 246, and O'Brien v. Chicago & N. W. Ry. Co. (C. C.) 116 Fed. 502, involve the construction of the Iowa statute relating to the liability of common carriers in that state. In the Rose Case the plaintiff was traveling on a pass issued by the railway company, and the Supreme Court of Iowa held that the railroad company could not by a special contract avoid its common-law liability for negligence, and that under the Iowa Code (1873) § 1307, railroad companies were liable for all damages caused by the negligence of their agents or employés, and that no special contract could be entered into exempting them from liability. In the O'Brien Case, supra, involving the validity of a contract made by O'Brien as an employé of the American Express Company, whereby he agreed to absolve the railroad company and the express company from all liability for damages which he might sustain by reason of the negligence of the said companies or either of them, Judge Shiras held that such a contract was void under section 2071 of the Iowa Code. That section declared that all railroad companies operating a railway in that state should be liable for all damages sustained by any person, including employés of such corporations, in

166 F.—34

consequence of any neglect or mismanagement of its agents or its employés; and it further provided that any contract which restricted such liability should not be legal or binding.

It is quite manifest that both the Kansas and Iowa statutes which were under consideration in the above cases were much broader than section 4400 of the North Dakota Code hereinbefore quoted. The language of the North Dakota law is:

"Every railroad company organized or doing business in this state shall be liable for all damages done to any employé of such company, in consequence of," etc.; * * * "and no contract which restricts such liability shall be legal or binding."

The language of the Kansas statute is:

"That railroads in this state shall be liable for all damages done to person or property when done in consequence of any negligence on the part of the railroad companies." Laws Kan. 1870, p. 197, c. 93.

While the language of the Iowa statute is:

"Every corporation operating a railroad shall be liable for all damages sustained by any person, including employés of such corporation, in consequence of the negligence," etc.; * * * "and no contract which restricts such liability shall be legal or binding."

In my opinion, section 4400 of the North Dakota Revised Codes of 1905 is a fellow-servant statute, pure and simple, and the prohibition therein contained against the making of contracts restricting the liability of railroad companies for damages occasioned by their negligence should not be construed as having any reference whatsoever to contracts made with railroad companies for the rendition of special services by persons who are in no sense their employés.

Counsel for plaintiff have also suggested that the contract here in question is illegal and void, as being within the express prohibition of sections 4333 and 4334 of the North Dakota Revised Codes of 1905. These sections of the laws of that state were designed to prevent common carriers from giving undue or unreasonable preferences to persons or localities with respect to any particular description of traffic. They were not designed or intended to apply to that peculiar class of transportation which was the subject-matter of the contract between the Northern Pacific Railway Company and the Gollmar Bros. Circus Company. These sections of the North Dakota Revised Codes should, in my opinion, be construed as referring simply to such transportation services as the railroads of that state were or are required to perform for the general public in the discharge of their duties to the public as common carriers, and should not be held to embrace services which the common carriers of that state as well as of other states of the Union have never been obligated to perform, but which they have rendered to the public from time to time under special contracts similar to the one here in question.

My conclusion is, therefore, that the Northern Pacific Railway Company was under no common-law or statutory obligation to move the train of the circus company over any of its lines of road in the manner in which the train was being moved at the time the plaintiff was injured, and that the railway company was under no obligation, common-

law or statutory disability which operated to prevent it from making the contract here in controversy with the Gollmar Bros. absolving the railway company from liability to the Gollmar Bros. for any and all damages which the latter might sustain through the negligence of the servants or employés of the former.

2. Holding, as I do, that the contract between Gollmar Bros. and the railroad company was perfectly legal and binding as between the parties thereto, there yet remains for consideration the controlling question as to whether Gollmar Bros., the employers of this plaintiff, had the right, in making the contract for his transportation, to agree, without any knowledge or consent on the part of the plaintiff, that the railway company should be relieved from all liability for damages occasioned by the negligence of the railway company which this plaintiff might sustain while being transported on the train of the circus company. The answer to this question will determine whether the demurrer should be sustained or overruled.

There are numerous authorities in which the legality of such contracts has been considered by the courts, and the overwhelming weight of authority is in favor of their validity. Coup v. Wabash, St. Louis & Pacific Ry. Co., 56 Mich. 111, 22 N. W. 215, 56 Am. Rep. 374; Forepaugh v. Del., etc., Ry. Co., 128 Pa. 217, 18 Atl. 503, 5 L. R. A. 508, 15 Am. St. Rep. 672; Chicago, M. & St. P. Ry. Co. v. Wallace, 66 Fed. 506, 14 C. C. A. 257, 30 L. R. A. 161; Wilson v. Atlantic Coast Line Ry. Co. (C. C.) 129 Fed. 774; Long v. Lehigh Valley Ry. Co., 130 Fed. 870, 65 C. C. A. 354; Kelly v. Malott, 135 Fed. 74, 67 C. C. A. 548; Blank v. Ill. Cen. Ry. Co., 182 Ill. 332, 55 N. E. 332; Louisville, New Albany & Chicago Ry. Co. v. Keefer, 146 Ind. 21, 44 N. E. 796, 38 L. R. A. 93, 58 Am. St. Rep. 348; Pittsburg, C., C. & St. L. Ry. Co. v. Mahoney, 148 Ind. 196, 46 N. E. 917, 47 N. E. 464, 40 L. R. A. 101, 62 Am. St. Rep. 503; Hosmer v. Old Colony Ry. Co., 156 Mass. 506, 31 N. E. 652; Peterson v. Chicago & Northwestern Ry. Co., 119 Wis. 197, 96 N. W. 532, 100 Am. St. Rep. 879; Robinson v. St. Johnsbury & L. C. Ry. Co., 80 Vt. 129, 66 Atl. 814, 9 L. R. A. (N. S.) 1249; C., R. I. & Pac. Ry. Co. v. Hamler, 215 Ill. 525, 74 N. E. 705, 1 L. R. A. (N. S.) 674, 106 Am. St. Rep. 187; Russell v. Pitts., C., C. & St. L. Ry. Co., 157 Ind. 305, 61 N. E. 678, 55 L. R. A. 253, 87 Am. St. Rep. 214; New York C. & H. R. Ry. Co. v. Difendaffer, 125 Fed. 893, 62 C. C. A. 1; Griswold v. New York & N. E. Ry. Co., 53 Conn. 371, 4 Atl. 261, 55 Am. Rep. 115; Davis v. Chesapeake & Ohio Ry. Co., 122 Ky. 528, 92 S. W. 339, 5 L. R. A. (N. S.) 458, 121 Am. St. Rep. 481; Shannon v. Chesapeake & Ohio Ry. Co., 104 Va. 645, 52 S. E. 376; Jones v. St. Louis So. W. Ry. Co., 125 Mo. 666, 28 S. W. 883, 26 L. R. A. 718, 46 Am. St. Rep. 514.

There are several cases in which the doctrine announced in the Voigt Case, supra, has been held inapplicable, by reason of some state statute declaring contracts of such a character void as against the public policy of the state. O'Brien v. C. & N. W. Ry. Co. (C. C.) 116 Fed. 502; Sewell v. A., T. & S. F. Ry. Co. (Kansas, 1908) 96 Pac. 1007; Mexican Ry. Co. v. Jackson, 118 Fed. 549, 55 C. C. A. 315. In each of the cases above cited the court had under consideration

either a contract between the shipper and the railroad company, or a contract between the shipper and his servant, whereby it was designed to absolve the railroad company from liability for damages arising from its own negligence. There are two cases, however, which have been cited by counsel in which the facts are quite similar to the case at bar. In each of these cases there was a contract between the shipper and the railroad company agreeing to absolve the latter from all liability, but in neither of them was there any contract between the shipper and his servant exempting the railroad company from liability in case of accident to him. While the precise question presented by the case at bar was present in each of these cases, the decision of the court rested upon other grounds.

In the case of Robertson v. Old Colony Ry. Co., 156 Mass. 525, 31 N. E. 650, 32 Am. St. Rep. 482, the railroad company had agreed to haul certain cars of a circus company, according to a certain schedule of time, for a price much less than the regular rate for such services. The circus proprietors agreed at their own expense to load and unload the cars, to hold the defendant harmless from all claims for damages to persons and property, and "to assume all risk of accident from any cause." An accident occurred from one of the cars of the circus company running off the track by reason of the defective condition of the trucks of one of its cars, and Robertson, an employé of the circus company, who was then in one of the cars of that company, was injured. In an action for damages by Robertson against the railroad company, the court held that he could not recover, for the reason that the railroad company had no control over the condition of the cars, and no power to interfere with them, as the contract between the circus company and the railroad company was simply to haul the cars as they were, which contract the railroad company had a perfect right to make, as it was under no obligation as a common carrier to draw the circus train. The court said:

"The defendant had no control over the condition of the cars, and no power to interfere with them; the contract was simply to haul the cars as they were. This contract the defendant had a right to make, and it was under no obligation to draw the cars as a common carrier."

The next case is that of Clough v. Grand Trunk Ry. Co., 155 Fed. 81, 85 C. C. A. 1, 11 L. R. A. (N. S.) 446. In that case there was a contract between the Wallace Circus Company, the employer of Clough, and the railroad company, absolving the railroad company from all liability to the circus company and its employés while traveling on the circus train; but there was no contract between Clough and the circus company, or between Clough and the railroad company, purporting to release either company from liability for damages occasioned by the negligence of their employés. While the court in its opinion discusses the precise question involved in the case at bar, the decision rested upon the peculiar phraseology of the contract between the railroad company and the circus company; and it was held that, under the contract there involved, the employés of the railroad company who were responsible for the accident became the special servants of the circus company, for whose negligence while so employed, the

railroad company could not be held responsible. The accident in the Clough Case was occasioned by a collision between two sections of the circus train, and the court said:

"Neither does the fact that the enginemen and trainmen were operating this train (the second division of the circus train) at the time of this collision affect the question of liability to this plaintiff. They (the enginemen and trainmen) were the general servants of the defendant in error, but, on this occasion they were the special servants of those who hired them. For the time being the railway company had parted with its control and direction of these servants, and was not responsible for their acts to either the circus company or those in its service whose only right upon this train was by virtue of their relation to the circus company." Citing Byrne v. Ry. Co., 61 Fed. 605, 9 C. C. A. 666, 24 L. R. A. 693, and other cases.

Coming to the authorities in which the question here involved has been directly and specifically considered by the courts, the case of Long v. L. V. Ry. Co., 130 Fed. 870, 65 C. C. A. 354, has been cited as supporting defendant's contention that the plaintiff must be bound by whatever arrangement Collmar Bros. may have made with the railroad company for his transportation. Long at the time of the accident was in the employment of the United States Express Company as a messenger, and was then engaged in the duties of such employment in an express car on one of the defendant's trains. He had entered into a contract with the express company by which he agreed to release that company and the railroad company from all claims arising out of accidents or injuries that might happen to him while so employed, and by a contract between the express company and the railroad company, in force at the time the plaintiff was injured, it was provided that the defendant, the railroad company, should not be liable or responsible to any person for damages happening to or sustained by any employé or agent of the express company. The Circuit Court of Appeals of the Second Circuit in affirming the judgment of the court below held that the case was ruled by the case of Baltimore & Ohio Ry. Co. v. Voigt, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560. Circuit Judge Wallace, however, in the course of his opinion in the Long Case, used the following language, which is now relied upon by counsel for defendant in the case at bar in support of his contention:

"It is also urged for the plaintiff that the contract did not release the defendant in the absence of evidence tending to show that the plaintiff had any knowledge or information of the provision of the contract between it and the express company. Upon this point the language of Judge Earl in Blair v. Erie Railway Company, 66 N. Y. 313, 23 Am. Rep. 55, commends itself to our approval: 'He was not a passenger upon the train. He was upon the train in an express car, engaged in the separate business of the express company. He was in that car lawfully, only as he was there under the agreement. He knew that he had not paid any fare, and that he had made no contract for his carriage. He must have known that he was there under some arrangement between the express company and the defendant, and that whatever right he had to be transported was as the servant of the express company. He was there, not in his own right, but in the right of the express company, and hence he was bound by the arrangement that company made for him.'"

It is manifest that the opinion of the court in the Long Case rested upon the contract which Long as an express messenger had entered

into with the United States Express Company, his employer. It was therefore entirely unnecessary for the court to have expressed an opinion that the contract between the express company and the railroad company operated to exempt the railroad company from liability to Long in the event of his injury while on its train. I am inclined therefore to regard that portion of the opinion above quoted as mere "obiter." Considering Judge Earl's opinion in the Blair Case as an independent authority upon the proposition here under discussion, its force is materially weakened when we remember that it was not only a dissenting opinion, but that the views therein expressed are unsupported by any reasoning or by authority. Moreover, the Supreme Court of New York in a subsequent opinion announced a different view of the law from that expressed by Judge Earl. I refer to the opinion in the case of Brewer v. N. Y., Lake Erie, etc., Ry. Co., 124 N. Y. 59, 26 N. E. 324, 11 L. R. A. 483, 21 Am. St. Rep. 647. The reasoning in this case commends itself to my approval, and seems to me to be decisive of the question of law here presented.

Plaintiff's intestate, Henry Brewer, was an express messenger in the service of the United States Express Company, and as such occupied the express car in a train upon the defendant's railroad when a portion of the train, including such car, was derailed and he lost his life. The principal ground alleged by way of defense was that the railroad company was exempt from liability by virtue of an agreement made between the Erie Railway Company, and the express company absolving the former from all liability to the latter. There was no contract on the part of plaintiff's intestate with either the express company or the railroad company exempting either of those companies from liability for injuries which he might sustain while employed as an express messenger upon the trains. In affirming a judgment in favor of the plaintiff, Judge Bradley, speaking for the court, said:

"It, however, does not appear that the plaintiff's intestate had any knowledge or information of the provisions of the contract between the two companies. When he entered into the service of the express company he assumed the ordinary hazards incident to that business in his relation to that company; but there was no presumption or implied understanding that the messenger took upon himself the risks of injury he might suffer from the negligence or fault of the defendant. He was in no sense the employé of the defendant, nor could he, without his consent, be subjected to the responsibilities of that relation. Mo. Pacific Ry. Co. v. Ivy, 71 Tex. 409, 9 S. W. 346, 1 L. R. A. 500, 10 Am. St. Rep. 758. He was lawfully in the car, having the charge of the property and business there of the express company under its employment; and, although he paid no fare to the defendant, was carried by virtue of no contract made by him personally with the latter, and must have understood that he was there pursuant to some arrangement of his employer with the defendant, he was not necessarily, by that fact, chargeable with notice of the provisions in question of the contract. Presumptively he was entitled to protection against personal injury by the negligence of the defendant. Blair v. Erie Ry. Co., 66 N. Y. 313, 23 Am. Rep. 55; Nolton v. Western R. R. Co., 15 N. Y. 444, 69 Am. Dec. 623; Smith v. N. Y. C. R. R. Co., 24 N. Y. 222; Id., 29 Barb. (N. Y.) 132; Collett v. L. & N. W. R. Co., 16 Adol. & E. 984. And it is not seen how Brewer could, without his knowledge or consent, be placed in such relation to the defendant as to relieve it from liability to him for the consequences of its negligence affecting him personally. His contract of employment with the express company for its service did not, so far as appears, impose upon him such hazards, nor was

he chargeable with the stipulations in the contract between those companies except so far as they, through notice to him or otherwise, entered into that, pursuant to which he went into or remained in the service of the express company. The negligence of the defendant was the violation of its duty. It was the want of the care to which the plaintiff's intestate was entitled for his protection. This duty and such right did not depend or rest upon contract, but upon the relation as carrier of the plaintiff, and the care which the defendant as such was required to exercise. It is violated duty that furnishes the ground of an action for negligence, and where there is no duty there is no liability for such cause. We are unable to see in principle any legal support for the proposition that a person entering into a contract of service with one employer may, without his knowledge or assent, be made to assume the hazards of a service conducted by another, and in which he is not engaged, and be personally subjected to the consequences of the negligence of the latter without remedy against him."

In the case at bar the plaintiff undoubtedly knew that his employers, Gollmar Bros., had made an arrangement for his transportation from place to place while he was employed in the service of the circus company. He probably knew, as we may, I think, fairly assume, that the arrangement between his employers and the railroad company was such as to exempt and relieve the railroad company from that extraordinary degree of care which the law imposes upon common carriers in the performance of their duties to the general public. The plaintiff, of course, knew that the railroad company could not be required to move the circus train in the manner in which it was being moved at the time of his alleged injury, and we must assume that he knew that his employer had made some contract with the defendant whereby he (the plaintiff), together with his other co-employés, should be carried about the country. Such fact, however, does not furnish the least justification for the assumption that he authorized his employers to make an arrangement with the railroad company absolving that company from liability for damages in the event of injury. It seems to me that the plaintiff in this case had the right to assume that his employers in making a contract with the railroad company for his transportation would, if necessary, fully protect his rights against the negligent acts of the railroad. Certainly it is not to be presumed that he intended to authorize his employers to bargain away without his knowledge such an important right as an action for damages in case he was injured through the negligence of the railroad company. Plaintiff's employer had the right to arrange for his transportation, as that was presumably part of his contract of employment with the circus company, but when Gollmar Bros., without any notice to this plaintiff, attempted to bargain away rights existing or subsequently arising between him and third parties, they were attempting to do that which they had no power or authority to do, and the plaintiff should not be bound by such unauthorized action.

The fallacy underlying the contention of counsel for the defendant consists, as it seems to me, in the assumption that the plaintiff's right to maintain this action must be measured by the contract by virtue of which he was on the train at the time of the accident; in other words, that the plaintiff's rights can rise no higher than the contract under which he was being carried. But this assumption loses sight of the proposition that the liability of the defendant for the negligent

and injurious acts of its servants is not necessarily founded on any contract or privity between the plaintiff and the railroad company. As was said by the Supreme Court of the United States in Philadelphia & Reading Ry. Co. v. Derby, 55 U. S. 467, 483, 14 L. Ed. 502:

"It is true a traveler by stage or other public conveyance, who was injured by the negligence of the driver, has an action against the owner founded upon his contract to carry him safely. But the maxim of 'respondeat superior,' which by legal imputation makes the master liable for the acts of his servant, is wholly irrespective of any contract, express or implied, or any other relation between the injured party and the master."

My conclusion is, therefore, that the contract between the defendant, the Northern Pacific Railway Company, and the Gollmar Bros., exempting the former from all liability to the latter and their employés, while legal and binding as between the parties themselves, cannot as a matter of law operate to defeat an action brought by one of the employés of the circus company, having no knowledge of such contract, to recover damages from the railroad company caused by the negligence of the railroad company's servants.

The demurrer to the special defense alleged in the fourth paragraph of the answer must be sustained, and it is so ordered.